UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

CONTINTENTAL TRANSFERT TECHNIQUE
LIMITED,

        Plaintiff,

    v.

FEDERAL GOVERNMENT OF NIGERIA, *et al.*,

        Defendants.
_____

Civil Action No. 08-2026 (PLF)

OPINION

      This is an action to enforce an arbitral award issued in the United Kingdom under

Nigerian law.  The Clerk of this Court entered a default in this case on February 13, 2009.

Plaintiff Continental Transfert Technique Limited ("Continental") then moved for the entry of

default judgment against the defendants, the Federal Government of Nigeria, the Attorney

General of Nigeria, and the Minister of the Interior of Nigeria (collectively, "Nigeria").  After the

filing and service of that motion, Nigeria moved to dismiss Continental's complaint.  While the

motions to dismiss and for default judgment were pending, Continental filed an amended

complaint, which Nigeria then moved to dismiss.

      There are four motions currently pending before the Court: (1) Continental's

motion for default judgment, (2) Nigeria's motion to vacate the Clerk's entry of default,

(3) Nigeria's motion to dismiss Continental's original complaint, and (4) Nigeria's motion to

dismiss Continental's amended complaint.  Based on the parties' arguments, the relevant legal

authorities, and the entire record in this case, the Court will grant Nigeria's motion to vacate the

entry of default and deny the motion for default judgment.  It will also deny both motions to

dismiss.[1]

## I.  BACKGROUND

In 1999 Continental, a Nigerian corporation, entered into a contract with the

Nigerian government to produce "computer-compatible identification cards."  Am. Compl.

¶¶ 10-11.  The contract contained the following arbitration clause:

> In the event of any dispute[,] claim or difference which may arise
> out of or in relation to this contract and touching on the
> performance or breach thereof, . . . the matter shall be referred to
> arbitration in accordance with the provisions of the Arbitration and
> Concil[ia]tion Act[,] Cap. 19[,] Vol. 1[,] Laws of the Federation of
> Nigeria 1990. . . . [B]oth parties shall appoint an arbitrator who
> shall preside over the matter.  The Law governing the proceedings
> shall be Nigeria[n] Law and the award of the arbitrators shall be
> final and binding on all the parties hereto.

Am. Compl., Ex. B (Contract) at 8-9.

---

[1]     The papers filed in connection with this matter include: Continental's amended
complaint ("Am. Compl."); Nigeria's motion for a temporary stay of proceedings ("Mot. to
Stay"); Continental's memorandum in support of its motion for default judgment ("Default
Mot."); Nigeria's motion to vacate the Clerk's entry of default and to dismiss the complaint
("MTD1"); Continental's opposition to Nigeria's motion to dismiss ("MTD1 Opp."); Nigeria's
opposition to Continental's motion for default judgment and reply to Continental's opposition
("MTD1 Reply"); the status report filed by the parties on October 2, 2009 ("Status Report");
Nigeria's motion to dismiss Continental's amended complaint ("MTD2"); and Continental's
opposition ("MTD2 Opp.").  Nigeria has filed a declaration by one of its attorneys, Kenechukwu
Okoli, with each of its briefs.  Where cited, each declaration is entitled "[name of accompanying
brief, e.g., MTD1], Okoli Decl."

On February 26, 2010, eight days after the deadline for submission of a timely
reply, Nigeria filed a reply to Continental's opposition to the motion to dismiss the amended
complaint ("Reply") and another declaration by Mr. Okoli.

Claiming that Nigeria had failed to perform its obligations under the contract, Continental initiated arbitration pursuant to the contract's arbitration clause in 2007.  Am. Compl. ¶ 17.  Nigeria disputed Continental's claims and raised counterclaims of its own.  Id. ¶ 18.  The two parties then each selected one arbitrator to serve on the panel that would decide their claims; those two arbitrators in turn selected a third panel member.  Id. ¶ 20.  At a series of hearings held at the International Dispute Resolution Centre ("ICSID") in London, counsel for each party presented witnesses and documentary evidence to the arbitral panel in June 2008.  Id. ¶¶ 20-22.  On August 14, 2008, the arbitrators issued their decision ("the arbitral award"), finding in Continental's favor as to some claims and in Nigeria's as to others.  Id. ¶ 24.  Once damages owed to Nigeria were set against those owed to Continental, the arbitrators determined that Nigeria was liable to Continental in the amount of approximately 29.7 million Nigerian *naira*, or around 252 million dollars in United States currency.  Id. ¶ 24.  Nigeria was also ordered to pay Continental's costs as well as 95 percent of the fees arising from the arbitration itself.  Id. ¶¶ 25-26.

On November 25, 2008, Continental filed the original complaint in this action, seeking enforcement of the arbitral award under the Federal Arbitration Act, 9 U.S.C. §§ 201 *et seq.*, and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, *opened for signature* June 10, 1958, 21 U.S.T. 2517, *reprinted in* 9 U.S.C. § 201 (historical and statutory notes) ("the New York Convention").  Pursuant to 28 U.S.C. § 1608(a)(3), the Clerk of this Court, at plaintiff's request, effected service on Nigeria by sending the appropriate documents to the head of Nigeria's Ministry of Foreign Affairs.  The defendants accepted service on December 11, 2008.  Return of Service/Affidavit, Docket No. 7; Mot. to Stay at 3.

While those events occurred during the progress of the litigation before this Court, Continental filed a related action in the United Kingdom.  On December 9, 2008, roughly two weeks after filing the instant action before this Court, Continental filed a claim form in the United Kingdom's High Court of Justice ("the English court"), seeking to enforce the arbitration award there.  Am. Compl. ¶ 30.  In an order issued on December 19, 2008, the High Court gave Continental "leave to enforce the arbitration award . . . in the same manner as a Judgment or Order" and ordered that "judgment be entered against the Defendants in the terms of the said Award."  Am. Compl., Ex. D at 1.  The English court also instructed Nigeria that under English law, "you have the right to make an application to the Court within 2 months and 22 days after service of the Order to set aside this Order."  Id. at 2.  Continental would gain the right to enforce the award only after those 2 months and 22 days had passed, or, if Nigera moved to vacate the award, after that motion had been adjudicated.  Id.

The English court's December 19, 2008 order was served on Nigeria on March 13, 2009.  Am. Compl. ¶ 33.  In the meantime, on February 9, 2009, the time within which Nigeria was required to answer or otherwise respond to Continental's complaint before this Court expired.  On February 12, 2009, Continental requested entry of default against Nigeria, and the Clerk of the Court duly entered the default on February 13, 2009.  On February 18, 2009, Continental filed a motion for default judgment, which was mailed to Nigeria by the Clerk of the Court on February 20.

On March 25, 2009 — after Nigeria had received both the motion for default judgment and the preliminary order from the United Kingdom's High Court — Nigeria appeared in the litigation before this Court, moving for a temporary stay of the proceedings so that the

defendants could respond to Continental's motion and move to vacate the Clerk's entry of default.  See Mot. to Stay at 5.  The Court granted the motion for a stay on April 24, 2009, ordering Nigeria to submit its motion to vacate the default by May 11, 2009.

On April 20, 2009, Nigeria initiated proceedings to set aside the arbitration award before Nigeria's Federal High Court, Lagos Division ("the Nigerian court").  MTD1, Okoli Decl. ¶ 19.  Nigeria's filing in the Nigerian court requested the following relief: (1) "[a]n Order enlarging the time within which to apply to set aside the Award," MTD1, Okoli Decl., Ex. A at 2, ¶ 1 — requested because the period during which Nigeria could have timely applied under Nigerian law to set aside the award had already elapsed, id. at 6, ¶ 18 ; (2) "[a] declaration" that the arbitration in question was a "domestic commercial arbitration subject to Nigerian municipal law, and not an international commercial arbitration to which the 1958 New York Convention applies," id. at 2, ¶ 3; (3) "[a] declaration that the arbitral tribunal misconducted [sic] itself in rendering the Final Award, particularly when the tribunal awarded damages for loss of profits to the defendants contrary to the agreement of the parties," id. at 2, ¶ 4; (4) "[a]n Order setting aside the Award," id. at 2, ¶ 5; and (5) an injunction "restraining the defendant . . . from seeking or continuing to seek recognition and enforcement of the aforesaid Award, in the United States or in any part of the world."  Id. at 2, ¶ 6.

On April 23, 2009, without hearing argument or receiving briefs from Continental, the Nigerian court issued an ex parte order in which it (1) granted Nigeria an extension of time in which to apply to vacate the arbitration award, and (2) barred Continental "from seeking or continuing to seek to [sic] the recognition and enforcement of the Final Award . . . pending the hearing and determination" of Nigeria's motion for an "interlocutory injunction"

on April 27, 2009.  MTD1, Okoli Decl., Ex. B at 2, ¶¶ 1, 4.  The April 27th hearing on Nigeria's

motion for an injunction subsequently was delayed until May 20, 2009.  Status Report ¶ 4.

Meanwhile, Nigeria moved in this Court on May 11, 2009, to set aside the clerk's entry of default

and to dismiss Continental's complaint.  See MTD1 at 1.  While that motion was pending in this

Court, Continental moved on May 20 before the Nigerian court to vacate the order issued *ex*

*parte* by that court on April 23.  The court denied that motion on June 16, 2009.  MTD2, Okoli

Decl., Ex. F. at 24.  Progress in the Nigerian litigation since that date appears to have stalled; the

judge assigned to the case retired "on or about September 5, 2009," and "[a] new judge has not

yet been assigned."  Status Report ¶ 7.

On June 23, 2009, after Nigeria had filed its motion to vacate and to dismiss in

this Court, Continental applied to the English court for an order stating that the "Interim Order

f[ro]m the Court dated 19 December 2008 is now absolute, and [Continental] is now entitled to

apply for enforcement of this judgment."  MTD2, Okoli Decl., Ex. A ¶ 3(i).  Continental claimed

to seek an "absolute" order because it believed Nigerian courts would require it "to show that the

interim Order had become absolute[] by producing additional documentary evidence."  Id. ¶ 15.

Specifically, Continental believed that Nigerian courts would require from the English court an

order acknowledging that "(i) the Claim Form and Order of 19 December 2008 were validly

served on the Defendants; (ii) the 2 month 22 day period for the Defendants to apply to the court

to set aside the Order had expired; and (iii) the Defendants did not apply to the Court to have this

Order set aside during the relevant period."  Id. ¶¶ 15-19.  The English court responded on June

26, 2009, by issuing an updated version of its December 19, 2008 order ("the final order"), which

again purported to enter judgment for Continental "in the terms of the said [arbitration] award."

6

Am. Compl., Ex. F ¶ 2.  The updated order also provided that "[t]his Order is absolute," and that Continental "is entitled to apply for enforcement of this judgment."  Id. ¶ 3.

After the issuance of the English court's final order, Continental filed an amended complaint in this Court on November 25, 2009.  Continental's claim requesting enforcement of the arbitration award under the New York Convention remained the same, but the amended complaint contained a second, newly added claim for relief: a request for enforcement of the English court's final order in the United States pursuant to the District of Columbia's Uniform Foreign-Money Judgments Recognition Act, D.C. Code §§ 15-381 et seq. ("UFMJRA").  Am. Compl. ¶¶ 44-48.  In January 2010 Nigeria filed a motion to dismiss the amended complaint, incorporating the arguments from its first motion to dismiss by reference and making new arguments in response to Continental's claim under the UFMJRA.  See MTD2 at 1.

## II.  MOTIONS FOR DEFAULT JUDGMENT, TO VACATE ENTRY OF DEFAULT, AND TO DISMISS THE ORIGINAL COMPLAINT

Continental moved for the entry of default judgment against Nigeria after the defendants failed to make a timely response to the original complaint.  When Continental filed an amended complaint, however, that complaint superseded the original one.  See 6 CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 1476 (2d ed. 1990).  Continental's motion for a default judgment thus applies to a complaint that no longer forms the basis for this litigation, and the motion therefore is moot.  See United States v. Aegis Ins. Co., Civil Action No. 08-1728, 2009 WL 577286, at *2 (M.D. Pa. Mar. 5, 2009) (filing of an amended complaint moots pending motion for default judgment); Rock v. Am. Express Travel Related Servs. Co., Inc., Civil Action No. 08-0853, at *1 (N.D.N.Y. Dec. 17,

2008) (same); <u>Best Western Int'l, Inc. v. Melbourne Hotel Investors, LLC</u>, Civil Action No. 06-2276, 2007 WL 2990132, at *1 (D. Ariz. Oct. 10, 2007) (same); <u>Nelson v. Nationwide Mortgage Corp.</u>, 659 F. Supp. 611, 615 (D.D.C. 1987) (same).  Accordingly, the Court will deny the motion for default judgment as moot and grant Nigeria's motion to vacate the clerk's entry of default.

Because Nigeria's first motion to dismiss was directed at Continental's original complaint, that motion, too, is moot and will be denied.  The arguments contained in that motion are incorporated by reference into Nigeria's second motion to dismiss and will be analyzed as part of that motion.

### III.  NIGERIA'S MOTION TO DISMISS THE FEDERAL ARBITRATION ACT CLAIM IN THE AMENDED COMPLAINT

In its motion to dismiss Continental's amended complaint, Nigeria requests dismissal of Continental's claim for enforcement of the arbitral award on the grounds that (1) the arbitration award in question is "domestic" rather than "international" in character and so cannot be enforced under the New York Convention, MTD1 at 5; (2) Nigeria is not amenable to suit because it has not waived sovereign immunity, <u>id</u>. at 7; (3) the Court does not have personal jurisdiction over the defendants, <u>id</u>. at 8; (4) dismissal is warranted by the doctrine of *forum non conveniens*, <u>id</u>. at 9; and (5) this matter should be adjourned because Nigeria has moved to set aside the arbitral award in the Nigerian Federal High Court.  <u>Id</u>. at 12. None of these arguments is persuasive; some border on the frivolous.

### A.  Applicability of the New York Convention

Both the United States and Nigeria have ratified the New York Convention, an international agreement which "provides that signatory nations are to recognize and enforce arbitral awards rendered in other nations."  Termorio S.A. E.S.P. v. Electranta S.P., 487 F.3d 928, 933 (D.C. Cir. 2007); see Am. Compl. ¶ 6; MTD1 Opp. at 7 n.1.  Under the Federal Arbitration Act ("FAA"), "[a]n arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, . . . falls under the Convention," unless the agreement or award in question arises out of "a relationship which is entirely between citizens of the United States" and does not have any "reasonable relation with one or more foreign states."  9 U.S.C. § 202.

Nigeria advances the implausible argument that the arbitral award Continental obtained and seeks to enforce does not fall under the New York Convention because the Convention applies only to "international" agreements, and the contract between Continental and Nigeria was not "international" because it was formed between Nigerian citizens and governed by Nigerian law.  MTD1 at 5-6.  Nigeria misunderstands the purpose and effect of the Convention.  The Convention applies to any arbitration award "made in the territory of a State other than the State where the recognition and enforcement of [the] award[ is] sought."  New York Convention, art. I.  Thus, "[u]nder the Convention, the critical element is the place of the award: if that place is in the territory of a party to the Convention, all other Convention states are required to recognize and enforce the award, regardless of the citizenship or domicile of the parties to the arbitration."  Termorio S.A. E.S.P. v. Electranta S.P., 487 F.3d at 934 (citation and internal quotation marks omitted).  In this case, the arbitration award in question was rendered in

9

the United Kingdom by arbitrators applying Nigerian law.  MTD1, Okoli Decl. ¶¶ 9-10; MTD1 at 5.  It is undisputed that both Nigeria and the United Kingdom are parties to the Convention.  Am. Compl. ¶ 6; MTD1 Opp. at 7 n.1.  Since the award was rendered in a participating country other than the United States, the Convention applies.

## B.  Waiver of Sovereign Immunity

Almost as an aside, Nigeria contends that it "has not waived its sovereign immunity to suit in the United States."  MTD1 at 7.  That argument is plainly incorrect.  Under the Foreign Sovereign Immunities Act ("FSIA"), "[a] foreign state shall not be immune from the jurisdiction of courts of the United States . . . in any case . . . in which the action is brought . . . to confirm an award" that is "governed by a treaty or other international agreement in force for the United States calling for the recognition and enforcement of arbitral awards."  28 U.S.C. § 1605(a)(6).  "[T]he New York Convention is exactly the sort of treaty Congress intended to include in the arbitration exception" to the FSIA.  Creighton Ltd. v. Government of the State of Qatar, 181 F.3d 118, 123-24 (D.C. Cir. 1999) (citation and internal quotation marks omitted).  Nigeria therefore may not invoke the defense of sovereign immunity to prevent the enforcement of the arbitral award.  Id.

## C.  Personal Jurisdiction over the Defendants

Similarly without merit is the defendants' contention that this Court lacks personal jurisdiction over them because they do not have sufficient minimum contacts with the District of Columbia.  See MTD1 at 8.  Service on the defendants in this matter was made pursuant to the relevant provision of the Foreign Sovereign Immunities Act, 28 U.S.C.

10

§ 1608(b)(3).  See Certificate of Mailing, Docket No. 6; Mot. to Stay at 3.  "If service of process

has been made under § 1608, personal jurisdiction over a foreign state exists for every claim over

which the court has subject matter jurisdiction."  Price v. Socialist People's Libyan Arab

Jamahiriya, 294 F.3d 82, 89 (D.C. Cir. 2002).  Furthermore, "foreign states are not 'persons'

protected by the Fifth Amendment," and so may not claim the protections of the Due Process

Clause.  Id. at 96.  Consequently, whether Nigeria has sufficient minimum contacts with the

District of Columbia to satisfy due process is immaterial.  See id. at 95-100.  Because proper

service was made upon Nigeria pursuant to Section 1608, and the Court has subject matter

jurisdiction over this matter under the FSIA, see 28 U.S.C. § 1330(a); Verlinden B.V. v. Central

Bank of Nigeria, 461 U.S. 480, 489-91, 497 (1983), the Court has personal jurisdiction over the

defendants.

### D.  Forum Non Conveniens

Nigeria next asserts that the Court should dismiss this case on *forum non*

*conveniens* grounds.  "[W]hen an alternative forum has jurisdiction to hear [a] case, and when

trial in the chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out

of all proportion to [the] plaintiff's convenience, or when the chosen forum is inappropriate

because of considerations affecting the court's own administrative and legal problems, the court

may, in the exercise of its sound discretion, dismiss the case."  Am. Dredging Co. v. Miller, 510

U.S. 443, 447-48 (1994) (citations and internal quotation marks omitted; alterations in original).

"In deciding *forum non conveniens* claims, a court must decide (1) whether an alternative forum

for the dispute is available and, if so, (2) whether a balancing of private and public interest

factors strongly favors dismissal." <u>Agudas Chasidei Chabad of United States v. Russian Federation</u>, 528 F.3d 934, 950 (D.C. Cir. 2008).  The plaintiff receives the benefit of "a substantial presumption in favor of [its] choice of forum."  <u>Id</u>.

Nigeria's claim of *forum non conveniens* in this case must fail in the first instance because the defendants have not established the existence of an adequate alternative forum.  The Nigerian forum favored by the defendants cannot grant the same relief that a United States court can.  "[O]nly a court of the United States (or one of them) may attach the commercial property of a foreign nation located in the United States."  <u>TMR Energy Ltd. v. State Property Fund of Ukraine</u>, 411 F.3d 296, 303 (D.C. Cir. 2005).  Where a foreign claimant seeks to enforce an arbitral award in the United States and may seek to attach property of the defendant that is located in this country, dismissal on *forum non conveniens* grounds would be inappropriate.  <u>Id</u>. at 303-04 (affirming district court's refusal to dismiss case where there existed a possibility that foreign defendant might one day have assets in the United States subject to attachment).

Even if Nigeria had demonstrated the existence of a suitable alternative forum for the resolution of this case, the Court in its discretion would still decline to dismiss this action because the balance of "private and public interest factors" does not "strongly favor[] dismissal." <u>Agudas Chasidei Chabad of United States v. Russian Federation</u>, 528 F.3d at 950.  The private interests to be considered by the Court are those of the litigants — for example, "the relative ease of access to sources of proof[,] availability of compulsory process for attendance of unwilling" witnesses, and the enforceability of any judgment that is ultimately obtained.  <u>Am. Dredging Co. v. Miller</u>, 510 U.S. at 448 (quoting <u>Gulf Oil Corp. V. Gilbert</u>, 330 U.S. 501, 508 (1947)) (internal quotation marks omitted).  As for public interest factors, the Court may also take into account

12

such factors as the congestion of the chosen forum's docket, any difficulties that may be posed by the prospect of applying the laws of another jurisdiction, and the relevance of the litigation to the community in which the chosen forum is located.  Id. at 448-49.

> Nigeria argues that, on balance, these factors weigh in favor of dismissal, because

> [t]he people of D.C. have no interest in the subject of this claim; Nigeria[,] where the case arose, has an adequate judicial system to deal with this matter, there is easier access to the witnesses and evidence in Nigeria; the Nigerian plaintiff corporation has not claimed that it will not receive a fair trial in Nigeria; the D.C. court cannot issue compulsory process to an unwilling witness which the Nigerian court can; common sense suggests that it is far less expensive for these Nigerian litigants to litigate this matter in Lagos, Nigeria . . . than in D.C.

MTD1 at 11.  Nigeria's alleged concerns about access to witnesses and compulsory process are misplaced in this proceeding and fail to overcome the presumption in favor of Continental's chosen forum.  An action for the enforcement of a foreign arbitration award does not proceed to a full-blown trial; "[t]he hearing on such a petition [for enforcement] . . . take[s] the form of a summary procedure in the nature of federal motion practice.  TermoRio S.A. E.S.P. v. Electranta S.P., 487 F.3d at 940 (citation and internal quotation marks omitted).  Against Nigeria's assertion — purportedly grounded in "common sense" but accompanied by no evidence or specific allegations — that litigating in this forum will be more expensive for the litigants, the Court must weigh Continental's strong interest in being able to attach any property of Nigeria located in the United States in satisfaction of the arbitral award.  The private interests at stake here thus favor affirming Continental's choice of forum, not overriding it.

An analysis of relevant public interest factors yields the same result.  Contrary to Nigeria's suggestion, the Court sees no evidence that the plaintiff wishes "to make this Court 'the

courthouse to the world or an international court of claims.'" MTD1 at 10.  Indeed, by ratifying

the New York Convention, Congress, not the plaintiff, determined that this court and others in

the United States should be open to foreign litigants seeking to enforce arbitral awards.

Similarly, against Nigeria's complaint that "[t]he people of D.C. have no interest in the subject of

this claim," the Court notes that awards that are enforceable in the United States under the New

York Convention may frequently be only loosely connected with the forum in which enforcement

is sought.  Since Congress did not consider that possibility a reason for rejecting the Convention,

the Court will not invoke it to reject a claim brought under the Convention. Therefore, because

Nigeria has identified no public or private interest that overcomes the presumption in favor of

Continental's choice of forum, the Court declines to dismiss this case on *forum non conveniens*

grounds.

### E.  Adjournment Under the New York Convention

Nigeria argues that "[t]his Court should refuse recognition of the suspended

[arbitral] award" because the defendants "have applied to a court of competent jurisdiction in

Nigeria[] to set aside the Award which is the subject of this lawsuit."  MTD1 at 12.  In making

this argument, which occupies just over a page in the first motion to dismiss, the defendants cite

*In re* Chromalloy Aeroservices, Inc., 939 F. Supp. 907 (D.D.C. 1996), for the proposition that

"Article V of the New York Convention is permissive in the sense that it gives the court the

discretion whether or not to recognize and enforce an award."  MTD1 at 12.  But Chromalloy

most emphatically does not stand for such a proposition.  Indeed, the court in that case noted that

a court "*must* grant [a] [p]etition to [r]ecognize and [e]nforce [an] arbitral award unless it finds

one of the grounds for refusal . . . of recognition or enforcement of the award specified in the . . .

Convention." <u>In re</u> <u>Chromalloy Aeroservices, Inc.</u>, 939 F. Supp. at 909 (citation and internal

quotation marks omitted; emphasis in original).  Only two provisions of the Convention —

neither of which is mentioned in the defendants' briefs — could conceivably relate to Nigeria's

argument that this Court should refuse to recognize Continental's arbitration award: either

(1) because the award has already been suspended by a Nigerian court, or (2)  because Nigeria is

seeking to have it suspended.

       Under article V, paragraph 1(e) of the Convention, a court *may* refuse

enforcement of an award if the award "has been set aside or suspended by a competent authority

of the country in which, or under the law of which, that award was made."  New York

Convention, art. V, ¶ 1(e).  That provision is inapplicable here, however, because for all of

Nigeria's conclusory references to the arbitration award as "suspended," Nigeria has presented

absolutely no evidence that any court, including the Federal High Court in Nigeria, has issued

any ruling whatsoever on the substantive validity of the award.  While the Federal High Court

did, at Nigeria's request, issue an *ex parte* order temporarily barring Continental "from seeking

or continuing to seek to [*sic*] the recognition and enforcement of the Final Award . . . pending the

hearing and determination" of Nigeria's motion for an "interlocutory injunction," MTD1, Okoli

Decl., Ex. B at 2, ¶ 4, that order does not purport to assess, much less set aside or suspend, the

award itself.

       Perhaps Nigeria means to suggest that this action should be dismissed under a

different provision of the New York Convention.  Under Article VI of the Convention,

> [i]f an application for the setting aside or suspension of the
> [arbitral] award [whose enforcement is sought] has been made to a
> competent authority . . . , the authority before which the award is
> sought to be relied upon may, if it considers it proper, adjourn the
> decision on the enforcement of the award.

New York Convention, art. VI.  "Adjourn" in this context means "to stay or dismiss without

prejudice," Telcordia Technologies v. Telkom SA, Ltd., Civil Action No. 03-7099, 2004 WL

784074, at *1 (D.C. Cir. Apr. 9, 2004), and it is within the discretion of the district court to

decide whether an action should be adjourned pursuant to Article VI.  Europcar Italia, S.p.A. v.

Maiellano Tours, Inc., 156 F.3d 310, 316 (2d Cir. 1998).

　　　　　Although the D.C. Circuit has not yet had occasion to offer much guidance

regarding the manner in which a district court should decide whether to "adjourn" a case brought

under the Convention, the Second Circuit has addressed at length the issue of whether to adjourn

a case to await the outcome of foreign proceedings.  See Europcar Italia, S.p.A. v. Maiellano

Tours, Inc., 156 F.3d at 316.    In considering the possibility of adjournment, a district court

"must take into account the inherent tension between competing concerns."  Id. at 317.  On the

one hand, there is an "emphatic federal policy in favor of arbitral dispute resolution," Termorio

S.A. E.S.P. v. Electranta S.P., 487 F.3d at 933, and "the adjournment of enforcement proceedings

impedes the goals of arbitration — the expeditious resolution of disputes and the avoidance of

protracted and expensive litigation."  Europcar Italia, S.p.A. v. Maiellano Tours, Inc., 156 F.3d

at 317.  On the other hand, "where a parallel proceeding is ongoing in the originating country and

there is a possibility that the award will be set aside, a district court may be acting improvidently

by enforcing the award prior to the completion of the foreign proceedings."  Id.

In light of the competing interests at stake when a district court is asked to consider adjournment, the Second Circuit suggests "several factors" that should be weighed by a court in determining whether to adjourn, including:

> (1) the general objectives of arbitration — the expeditious resolution of disputes and the avoidance of protracted and expensive litigation;
>
> (2) the status of the foreign proceedings and the estimated time for those proceedings to be resolved;
>
> (3) whether the award sought to be enforced will receive greater scrutiny in the foreign proceedings under a less deferential standard of review;
>
> (4) the characteristics of the foreign proceedings, including (i) whether they were brought to enforce an award (which would tend to weigh in favor of a stay) or to set the award aside (which would tend to weigh in favor of enforcement); (ii) whether they were initiated before the underlying enforcement proceeding so as to raise concerns of international comity; (iii) whether they were initiated by the party now seeking to enforce the award in federal court; and (iv) whether they were initiated under circumstances indicating an intent to hinder or delay resolution of the dispute;
>
> (5) a balance of the possible hardships to each of the parties . . . ; and
>
> (6) any other [relevant] circumstances. . . .

Europcar Italia, S.p.A. v. Maiellano Tours, Inc., 156 F.3d at 317-18.  In this case, those factors weigh heavily against adjournment.

First and most significantly, the procedural history of this case strongly indicates that the defendants moved to set aside the award in Nigeria only in order to manufacture a defense to Continental's claims before this Court.  Under Nigerian law, once an arbitration award has been issued, the party against whom it was issued has three months in which to apply in court

17

for the vacatur of the award.  Declaration of Adewole Adebayo in Support of Plaintiff's

Opposition ¶ 19; MTD1 Reply, Okoli Decl. ¶ 9.  Since the award at issue in this case was

rendered on August 14, 2008, Am. Compl. ¶ 1, any motion for vacatur should have been made by

November 14, 2008, three months later.  Nigeria took no action.  When the defendants were

served with notice of this lawsuit on December 11, 2008, they still took no action.  Only after

Continental had moved for the entry of a default judgment in this matter did the defendants make

an appearance before this Court, requesting a 45-day stay of proceedings.  During those 45 days,

the defendants finally decided that they wanted to challenge the arbitral award.  They filed the

necessary papers in the Nigerian court on April 20, 2009 — more than eight months after the

issuance of the arbitral award, and just three weeks before the defendants were required to move

to vacate the Clerk's entry of default in this Court.  The timing of that sequence of events clearly

indicates "an intent to hinder or delay resolution of the dispute" before this Court.  Europcar

Italia, S.p.A. v. Maiellano Tours, Inc., 156 F.3d at 318.

      The current status of the proceedings in Nigeria — to the extent that the Court has

been able to ascertain it based on the representations of the parties — also weighs against

adjournment.  As both the plaintiff and defendants have acknowledged, the judge assigned to this

case in the Nigerian Federal High Court has retired, and no judge currently presides over

Nigeria's attempt to set aside the arbitration award.  Status Report ¶ 7.  The case in Nigeria thus

seems to have stalled, a state of affairs that suggests a resolution of the Nigerian proceedings may

be long in coming.[2]  Adjournment of these proceedings pending the outcome of those in Nigeria

_____

      [2]     Nigeria has attached to its untimely reply an email from one of its attorneys, who
claims that a hearing in the Nigerian proceedings was set for March 18, 2010.  Reply, Okoli
Decl., Ex. 1.  If that hearing did occur, it was to address only a single procedural issue: whether

would therefore would contravene the strong federal policy in favor of arbitration and "the

expeditious resolution of disputes." <u>Europcar Italia, S.p.A. v. Maiellano Tours, Inc.</u>, 156 F.3d at

317.

The Court also is unpersuaded that the standard of review applied to the

arbitration award by an unbiased court in Nigeria would differ substantially from that applied in

this Court. Under the New York Convention to which Nigeria is also a party, a court may refuse

to recognize the award if it "deals with a difference not contemplated by or not falling within the

terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the

submission to arbitration." New York Convention, art. V, ¶ 1(c). The defendants have failed to

demonstrate that Nigerian law is substantially less deferential. Under Nigerian law, an

arbitration award may be set aside for two reasons. First, a court "may set aside an arbitral award

if the party making the application furnishes proof that the award contains decisions on mat[t]ers

which are beyond the scope of submission to arbitration." Arbitration and Conciliation Act,

(1990) Cap. 19, § 29(2). Second, the award may be set aside "[w]here an arbitrator has

misconduct[ed] [*sic*] himself, or where the arbitral proceedings, or award, has been improperly

procured." <u>Id</u>. § 30(1).

The first of those provisions closely resembles the language of the New York

Convention, and Nigeria has not contended that a court's review under that provision would be

---

the Nigerian proceedings should be stayed pending Continental's attempt to appeal the Nigerian
court's refusal to vacate its April 23, 2009 *ex parte* order. <u>Id</u>. Because there is no indication that
a new judge has been assigned to preside over hearings on the merits of Nigeria's petition, or that
such hearings on the merits will occur at any point in the near future, the hearing on the motion
for a stay that may or may not have occurred in Nigeria on March 18, 2010, has no effect on the
Court's analysis of the adjournment issue.

any less deferential than it would be under the Convention.  The second provision is phrased very generally, and its meaning is unclear.  Nigeria contends that "Nigerian domestic law regards as 'misconduct', an award in which the arbitral panel granted a relief which violates the parties' written agreement."  MTD1 Reply, Okoli Decl. ¶ 17.  Assuming *arguendo* that the defendants have given a correct gloss on the Nigerian arbitration law, they nevertheless have failed to state whether or how such a form of "misconduct" differs from an arbitrator's rendering a "decision[] on matters beyond the scope of the submission to arbitration."  New York Convention, art. V, ¶ 1(c).  As a result, Nigeria has failed to demonstrate in what manner, if any, the Nigerian court's review of the arbitration award would differ from this Court's.

With regard to the hardships on the parties, the Court concludes that the hardship to the plaintiff if this action is adjourned is clear: it will be unable to enforce in the United States an arbitral award in its favor for an indefinite period of time.  If the action is not adjourned, the defendants, of course, will be faced with the possibility that the award will be enforced and, perhaps, some portion of Nigeria's property in the United States attached.  Since one or more parties will face considerable hardship regardless of the Court's decision, this factor is neutral and does not weigh in favor of adjournment.

Finally, the Court notes that Nigeria has frequently pointed to the restraining order issued by the Nigerian Federal High Court as evidence that Continental should not be permitted to enforce the arbitral award in the United States.  See, e.g., Status Report ¶ 12; MTD1 Reply ¶ 18.  The Nigerian court ordered Continental not to "seek . . . enforcement of the Final Award . . . pending the hearing and determination of" Nigeria's motion "for interlocutory injunction." MTD1, Ex. B at 2, ¶ 4.  Continental contends that, under Nigeria's law of civil procedure, that

restraining order lapsed automatically two weeks after the Nigerian Court heard argument on

Continental's motion to vacate the order.  Status Report ¶ 15.  Nigeria disagrees.  Status Report

¶ 12.  This Court's decision would remain the same in either case.  The restraining order was

issued *ex parte* without any analysis of the merits of Nigeria's claims that the arbitration award

should be set aside.  See MTD1, Ex. B.  It therefore does not undermine the validity of the award

or indicate that the award is likely to be vacated, and has no bearing on the question of

adjournment.  Given the timing of Nigeria's attempts to set aside the award, the uncertainty

surrounding the proceedings in Nigeria, and the federal policy favoring arbitration and its

enforcement, the Court declines to adjourn this matter.


 IV.  NIGERIA'S MOTION TO DISMISS CONTINENTAL'S CLAIM UNDER THE UFMJRA

With regard to Continental's claim under the District of Columbia's Uniform

Foreign-Money Judgments Recognition Act, Nigeria contends that the English court's final order

enforcing the arbitral award should not be recognized by this Court because (1) the order is not a

judgment, MTD2 at 3; (2) the order was "obtained by fraud,"  MTD2 at 3; and (3) Nigeria has

applied to "set aside" the order.  MTD2 at 5.  Like Nigeria's contentions regarding Continental's

claim for enforcement of the arbitral award, these arguments lack merit.


### A.  The English Court's Order as a Judgment

Under the District of Columbia's UFMJRA, a "foreign-money judgment" meeting

the requirements of the statute "is enforceable in the same manner as the judgment of a sister

jurisdiction which is entitled to full faith and credit."  D.C. CODE § 15-382.  According to

Nigeria, the English court order identified by Continental cannot be enforced under the

UJFMJRA because it "is simply a court order granting judgment to the plaintiff herein, and not

the actual *money judgment* that is final and conclusive and enforceable."  MTD2 at 3.  The

distinction eludes the Court.  The UFMJRA defines "foreign-money judgment" as "any judgment

of a foreign state granting or denying recovery of a sum of money."  D.C. Code § 15-381(2).  The

English court order attached to Continental's amended complaint provides:

> IT IS ORDERED THAT . . . judgment be entered against the
> Defendants in the terms of the said Award, namely
>
> (a) that the Defendants pay to the Claimant the sum of
> Nigerian Naira 29,660,166,207.48;
>
> (b) that the Defendants pay to the Claimant US Dollar
> 247,500.00 in respect of the Claimant's legal costs incurred in the
> arbitration;
>
> (c) to the extent that the Claimant has paid more than 5% of
> the costs of the arbitration . . ., that the Defendants reimburse the
> Claimant for any such excess payments.
>
> This Order is absolute, and the Claimant is entitled to apply for
> enforcement of this judgment.

Am. Compl., Ex. E ¶¶ 2-3.  As that language makes clear, the order grants Continental the right

to recover "a sum of money" and even refers to itself as a judgment.  In the face of these clear

indications that the order constitutes a judgment within the meaning of the UFMJRA, Nigeria has

cited absolutely no authority suggesting that the order does not carry the force of a judgment.

The Court therefore rejects Nigeria's argument.

### B.  Allegation That the Judgment Was Obtained by Fraud

A foreign judgment "need not be recognized [under the UFMJRA] if . . . [t]he

judgment was obtained by fraud."  Id. § 15-383(b)(2).  Nigeria contends that the judgment from

the High Court in the United Kingdom was fraudulently obtained because Continental did not

inform that court about the restraining order issued by the Nigerian Federal High Court in May

2009 or about the complaint filed by Continental in this Court.  MTD2 at 3-4.  In support of that

argument, Nigeria has submitted various documents not contained in the complaint, including a

declaration by one of the defendants' attorneys.  <u>See</u> MTD2, Okoli Decl.

      Nigeria does not specify under which provision of Rule 12(b) of the Federal Rules

of Civil Procedure it purports to proceed in arguing that Continental's UFMJRA claim should be

dismissed because the judgment in question was allegedly obtained by fraud.  Since the argument

does not concern the Court's authority to preside over this matter, it might be thought to

constitute a challenge under Rule 12(b)(6) of the Federal Rules.  But in fact, because Nigeria's

argument goes to the merits of Continental's claim rather than challenging the sufficiency of the

allegations contained in the plaintiff's complaint, it is not properly brought in a motion to dismiss

at all, but should instead appear in a motion for summary judgment.  5B CHARLES ALAN WRIGHT

& ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1356 (3d ed. 2004) ("[T]he

purpose of a motion [to dismiss] under Federal Rule 12(b)(6) is to test the formal sufficiency of

the statement of the claim for relief; the motion is not a procedure for resolving a contest . . . .

[about] the substantive merits of the plaintiff's case.").  That the argument belongs in a motion

for summary judgment rather than a Rule 12(b)(6) motion is further confirmed by the fact that

Nigeria has submitted several documents from outside the pleadings in support of its contentions.

<u>See</u> MTD2, Okoli Decl., Exs. A-H.  Such materials from outside the pleadings may not be used

to support a motion to dismiss pursuant to Rule 12(b)(6); if the Court considers the materials, the

motion to dismiss must be converted to a motion for summary judgment.  FED. R. CIV. P. 12(d).

In this instance, the Court will convert the defendants' motion to dismiss into a motion for summary judgment with regard to Nigeria's argument that the English judgment was obtained by fraud.  When a court converts a motion to dismiss into a motion for summary judgment under Rule 12(d) of the Federal Rules of Civil Procedure, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  FED. R. CIV. P. 12(d).  In this case no further opportunity is necessary, as Nigeria's argument fails even if the facts are assumed to be as the defendants portray them.

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits [or declarations] show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006).  Nigeria contends that the English judgment at issue in this case was obtained by fraud because Continental did not inform the English court about the proceedings before this Court or about the restraining order issued by the Nigerian Federal High Court.  MTD2 at 4.  Nigeria also maintains that the restraining order was still in effect at the time that Continental applied for an "absolute" order from the English court. MTD2 at 4.  Even if all of these facts are true, Nigeria has failed to show that the English judgment was obtained by fraud.

"[T]he only type of fraud that may justify non-enforcement of an otherwise valid judgment of any court of competent jurisdiction, including a foreign court, is extrinsic fraud." Laufer v. Westminster Brokers, Ltd., 532 A.2d 130, 133 (D.C. 1987).  In reaching that conclusion, the District of Columbia Court of Appeals relied on United States v. Throckmorton,

24

98 U.S. 61 (1878).  According to that case, "extrinsic fraud" occurs when, "by reason of something done by the successful party to a suit, there was in fact no adversary trial or decision of the issue in the case" — as, for example, "[w]here the unsuccessful party has been prevented [by fraud] from exhibiting fully his case."  United States v. Throckmorton, 98 U.S. at 65.  Extrinsic fraud may thus be described as "fraudulent conduct by the prevailing party that deprived the losing party of an adequate opportunity to present its case to the court."  3 VED P. NANDA & DAVID K. PANSIUS, LITIGATION OF INTERNATIONAL DISPUTES IN U.S. COURTS § 20:15 (2d ed. 2009) (citation and internal quotation marks omitted); accord In re Estate of Delaney, 819 A.2d 968, 981 n.4 (D.C. 2003).

   Nigeria has not alleged that Continental's failure to inform the English court of the proceedings in this Court or the issuance of the Nigerian restraining order "deprived" the defendants "of an adequate opportunity to present [their] case" in the United Kingdom.  Indeed, it is difficult to imagine how Nigeria could credibly make such an argument.  Had the defendants appeared in the English enforcement action, they presumably would have had ample opportunity to bring related proceedings to the English court's attention — but the defendants did not bother to appear.  They do not dispute that they were served with Continental's initial application for enforcement of the arbitral award in the United Kingdom or that they nevertheless failed to make a timely appearance in that action to contest the application.  See Am. Compl., Ex. E (affidavits of service).  There is no evidence that Continental is in any way responsible for Nigeria's failure to appear or that Continental otherwise prevented Nigeria from defending itself.[3]  Nigeria's

---

   [3]  Nigeria does complain in passing that the defendants were not served with copies of Continental's motion for an "absolute" order reiterating that the arbitral award had become enforceable under English law.  MTD2, Okoli Decl. ¶ 19.  As a result, they allege, they "did not

claims about what Continental should have told the English court "amount[] to nothing more than a complaint that [Continental] did not help" the defendants make their case, "and this certainly does not amount to 'extrinsic' fraud by any of the traditional definitions." Laufer v. Westminster Brokers, Ltd., 532 A.2d at 134 (citing Goodwin v. Home Buying Investment, Co., 352 F. Supp. 413, 415 (D.D.C. 1973)) (internal quotation marks omitted).

### C. Nigeria's Attempts to Set Aside the English Judgment

Finally, Nigeria argues that Continental's claim for enforcement pursuant to the UFMJRA should be dismissed, or at least stayed, because Nigeria is currently attempting to persuade an English court to set aside the judgment at issue. MTD2 at 5. Under the UFMJRA, "[i]f the defendant satisfies the court that either an appeal is pending or the defendant is entitled and intends to appeal from the foreign-money judgment, the court may stay the proceedings until the appeal has been determined or until the expiration of a period of time sufficient to enable the defendant to prosecute the appeal." D.C. CODE § 15-385. That provision authorizes a court to stay proceedings on a claim for enforcement of a foreign judgment, not to dismiss the claim, and so the Court will deny Nigeria's request for dismissal. Although the UFMJRA does allow a court to enter a stay where an appeal of the foreign judgment is pending, the Court declines to do so in this case. The fact that Nigeria inexplicably failed to appear to oppose Continental's application for enforcement of the arbitral award in the English court weighs against granting the

---

have the opportunity to oppose" Continental's application for enforcement. Id. This claim is spurious. By the time of Continental's motion for an absolute order, the time in which Nigeria could have opposed the application for enforcement had already elapsed. See Am. Compl., Ex. F ¶ B(2) (defendants had two months and twenty-two days after service of the order to oppose the application).

defendants a stay while they mount a collateral attack on the resulting judgment.  Furthermore,

the defendants have not made any attempt to demonstrate that, under English law, their attack on

the judgment is likely to be successful.  <u>See</u> MTD2 at 5 (devoting one three-sentence paragraph

to defendants' request for a stay of the UFMJRA claim).  The Court therefore denies the request

for a stay.

## V.  CONCLUSION

      For the foregoing reasons, Continental's motion for default judgment is denied,

while Nigeria's motion to vacate the Clerk's entry of default is granted.  The Court denies

Nigeria's motion to dismiss in its entirety, including that portion of the motion which the Court

has converted into a motion for summary judgment.  An Order consistent with this Opinion shall

issue this same day.


      /s/_____
      PAUL L. FRIEDMAN
      United States District Judge

DATE:  March 23, 2010