UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                   )
CONTINENTAL TRANSFERT TECHNIQUE    )
LIMITED,                           )
                                   )
    Plaintiff,                     )
                                   )
    v.                             )   Civil Action No. 08-2026 (PLF)
                                   )
FEDERAL GOVERNMENT OF NIGERIA, *et al.*, )
                                   )
    Defendants.                    )
_____)

OPINION

    Before the Court is a "Rule 60(a) Motion to Correct Clerical Mistake or Mistake Arising from Oversight or Omission," filed by plaintiff Continental Transfert Technique Limited ("Continental"). For the reasons stated below, the Court will grant the motion in part and hold the motion in abeyance in part.[1]

I. BACKGROUND

    Continental brought this action under the Federal Arbitration Act, 9 U.S.C. §§ 201 *et seq.*, and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards,

---

[1] The papers reviewed in connection with this matter include the plaintiff's Rule 60(a) motion ("Mot.") [Dkt. No. 48]; the declaration accompanying that motion ("Hankin Decl.") [Dkt. No. 48-1]; the defendants' memorandum in opposition ("Opp.") [Dkt. No. 50]; the plaintiff's reply ("Reply") [Dkt. No. 52]; the plaintiff's amended complaint ("Am. Compl.") [Dkt. No. 31]; the defendants' answer to the amended complaint ("Answer") [Dkt. No. 39]; the plaintiff's original complaint ("Compl.") [Dkt. No. 1]; the plaintiff's motion for summary judgment ("MSJ") [Dkt. No. 40]; the plaintiff's proposed order submitted with its motion for summary judgment ("Proposed Order") [Dkt. No. 40-14]; and the defendants' memorandum in opposition to summary judgment ("MSJ Opp.") [Dkt. No. 42].

*opened for signature* June 10, 1958, 21 U.S.T. 2517, *reprinted in* 9 U.S.C. § 201 (historical and statutory notes) ("the New York Convention"), to enforce a 2008 arbitral award issued in the United Kingdom. Continental also sought to enforce, under the District of Columbia's Uniform Foreign-Money Judgments Recognition Act, D.C. CODE §§ 15-381 *et seq*. ("UFMJRA"), a 2009 judgment by the United Kingdom's High Court of Justice, which confirmed the arbitral award as final and enforceable. See Am. Compl. ¶¶ 1-2.

The Court granted Continental's motion for summary judgment against the defendants — the Federal Government of Nigeria, the Attorney General of Nigeria, and the Minister of the Interior of Nigeria (collectively, "Nigeria") — and entered an Order and Judgment confirming the arbitral award in its entirety and holding the U.K. judgment enforceable under the UFMJRA. See Continental Transfert Technique Ltd. v. Federal Government of Nigeria, 800 F. Supp. 2d 161 (D.D.C. 2011); Order and Judgment (Aug. 3, 2011) [Dkt. No. 46]. Continental subsequently filed the present motion asking the Court, pursuant to Rule 60(a) of the Federal Rules of Civil Procedure, to "correct the judgment to reflect the amount of USD$423,184,115.29 plus applicable post-judgment interest." Mot. at 2. Embedded within Continental's motion are three distinct requests.

The arbitral award confirmed by this Court held Nigeria liable to Continental for three separate monetary sums in different currencies: Nigerian naira, British pounds, and U.S. dollars. Am. Compl. ¶¶ 24-27; MSJ Ex. 4 ("Arb. Award") at 50. Continental's first request is that the Court convert the British- and Nigerian-currency awards into U.S. dollars and combine all three figures to arrive at "a total U.S. dollar amount." Mot. at 2.

Continental's second request is for an award of prejudgment interest. The Court's Order and Judgment confirming the arbitral award made no mention of prejudgment interest. Converting the foreign currencies and combining all three sums, as requested by Continental, would result in a total sum of $250,522,787.84. See Hankin Decl. ¶¶ 5-6. As noted, Continental is asking for an award of $423,184,115.29. The difference of $172,661,327.45 represents prejudgment interest, to which Continental maintains it is entitled, spanning the period from the date of the arbitral award to the date of this Court's Judgment confirming the award. See id. ¶¶ 7-8; Opp. at 2 (stating that Continental's request "will raise the Final Award from a total of about $250,000,000 to a judgment of more than $423,000,000, a difference of about $180,000,000 USD.").

Finally, Continental also requests "applicable post-judgment interest" on the roughly $423 million specified above. See Mot. at 2.

## II. DISCUSSION

### A. Conversion of Awards in British and Nigerian Currencies to U.S. Dollars

The arbitral award found Nigeria liable to Continental for three separate amounts: (1) the primary award, in Nigerian naira in the amount of ₦29,660,166,207.48; (2) Continental's costs, in the amount of $247,500; and (3) any costs of the arbitration that Continental paid in excess of five percent of the total, which Continental and Nigeria agree amounts to £160,793.84.[2]

---

[2] The specific amounts of the awards in Nigerian naira and U.S. dollars are stated in the arbitration award and the U.K. judgment. See Arb. Award at 50; MSJ Ex. 10 ("U.K. Judgment") [Dkt. No. 40-11], ¶¶ 2(a), 2(b); Defendants' Statement in Opposition to Plaintiff's Statement of Material Facts Not in Dispute ("Def. Stmnt. Facts") [Dkt. No. 42-1], ¶¶ 12-13 (admitting these figures). By contrast, the award in British pounds for the costs of the arbitration requires a calculation and can be arrived at only by knowing what portion of the costs of the

Continental's complaint did not request that the foreign currencies be converted into U.S. dollars, nor that the three separate award amounts then be combined into a single total figure. See Compl.; Am. Compl.

At summary judgment, Continental's statement of undisputed material facts identified the exchange rates for British pounds and Nigerian naira that were in effect on the date of the arbitration award. Pl. Stmnt. Facts ¶ 16.[3] Nigeria admitted the accuracy of those rates. Def. Stmnt. Facts ¶ 16. In addition, the proposed order that Continental submitted with its summary judgment motion granted judgment to Continental in a single dollar amount corresponding to the combined value of the three separate awards after conversion into U.S. currency. See Proposed Order at 1. But nowhere in Continental's motion did the company explain why it was entitled to conversion of the foreign currencies into U.S. dollars, or why it was entitled to have that conversion calculated using the exchange rates that were in effect at the time of the arbitration award. Nigeria's opposition was likewise silent on these matters — understandably so, because Continental did not seek this form of relief in its complaint and only obliquely sought it at summary judgment.

---

arbitration above five percent of the total were paid by Continental. See Arbitration Award at 50; U.K. Judgment ¶ 2(c). At summary judgment, Continental stated and Nigeria admitted that Continental paid £173,467.20 of the total arbitration costs and therefore was owed £160,793.84 under the terms of the arbitration award. See MSJ at 27-34 ("Pl. Stmnt. Facts") [Dkt. No. 40] ¶¶ 14-15; Df. Stmnt. Facts ¶¶ 14-15; see also Am. Compl. at 10-11 (requesting order and judgment confirming the arbitration award in the amounts of ₦29,660,166,207.48, $247,500, and £160,793.84).

[3]   "At the time of the Award, the exchange rate from Nigerian Naira to United States Dollars was ₦118.654 to $1. The exchange rate from English Pounds to United States Dollars was £0.053 to $1." Pl. Stmnt. Facts ¶ 16. As Continental's Rule 60(a) motion points out, the exchange rate provided for British pounds contained an obvious typo: "£0.053" should have been "£0.53." See Mot. at 3 n.3.

The Court's Order and Judgment in favor of Continental simply confirmed the arbitration award in its entirety and ordered the U.K. judgment enforceable; neither the Order and Judgment nor the accompanying Memorandum Opinion addressed conversion of the foreign currencies. Continental now asks the Court to convert those currencies and combine the resulting figures into a total U.S. dollar amount, a task that Continental characterizes as the correction of a mistake arising from oversight or omission. See Mot. at 2. Continental argues that its summary judgment papers "identified the applicable exchange rates . . . the accuracy of which Nigeria admitted." Id. at 3.

Although Nigeria has admitted the accuracy of the exchange rates that were in place at the time of the June 2008 arbitral award, such an acknowledgment does not address whether Continental was entitled to conversion at the same exchange rates when Judgment was entered in this Court, over three years later. Because Continental never requested conversion of the foreign currencies in its complaint nor (explicitly) at summary judgment, the parties never addressed what exchange rate should apply were the Court to convert the foreign currencies into dollars. Consequently, the Court made no findings on this issue. See Continental Transfert Technique Ltd. v. Federal Government of Nigeria, 800 F. Supp. 2d 161.

There may be little reason, in theory, for a court confirming a foreign arbitration award to deny a party's request to convert that award into U.S. currency. And it is quite possible that the exchange rates in place at the time of the arbitration award should later be given effect by the court when undertaking such a conversion. But the latter proposition, in particular, cannot be taken for granted. A substantial shift in the exchange rate of a foreign currency between the date of the arbitration award and the date of judgment could dramatically alter the real value in U.S.

dollars of the arbitration award. Therefore Continental's entitlement to conversion of the foreign currencies at specific exchange rates implicates the true value of the judgment entered in its favor and thus the substance of its claim on the merits.

Because the parties did not address this issue in their summary judgment papers and because the Court's Memorandum Opinion says nothing about them, the corresponding silence of the Order and Judgment is neither a clerical error nor a mere oversight or omission within the meaning of Rule 60(a). "A Rule 60(a) motion 'can only be used to make the judgment or record speak the truth and cannot be used to make it say something other than what originally was pronounced.'" Rivera v. PNS Stores, Inc., 647 F.3d 188, 194 (5th Cir. 2011) (quoting 11 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2854 (1977)) (other quotation omitted). Thus, "resort to Rule 60(a) may be had when 'the judgment simply has not accurately reflected the way in which the rights and obligations of the parties have in fact been adjudicated,'" id. at 193 (quoting In re Frigitemp Corp., 781 F.2d 324, 327 (2d Cir. 1986)), and the court's authority is "limited to making corrections that are consistent with the court's intent at the time it entered the judgment." Id. at 195; accord Bowen Inv., Inc. v. Carneiro Donuts, Inc., 490 F.3d 27, 29 (1st Cir. 2007) ("Rule 60(a) is properly employed where 'the intention to include a particular provision in the judgment was clear, but the judge neglected to include the provision.'") (quoting 11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 2854 (2d ed. 1995)); Robert Lewis Rosen Associates, Ltd. v. Webb, 473 F.3d 498, 505 n.11 (2d Cir. 2007) ("Rule 60(a) permits the correction of . . . inadvertent errors when correction is necessary not to reflect a new and subsequent intent of the court, but to conform the order to the contemporaneous intent of the


court.") (quotation omitted); In re Walter, 282 F.3d 434, 440 (6th Cir. 2002) (Rule 60(a) does not "authorize the court to revisit its legal analysis or otherwise correct an error of substantive judgment" but only to "'correct mistakes or oversights that cause the judgment to fail to reflect what was intended at the time of trial.'") (quoting Vaughter v. Eastern Air Lines, Inc., 817 F.2d 685, 689 (11th Cir. 1987)) (other quotation omitted).

Nowhere at any stage of this case did the parties address Continental's right to have its foreign-currency awards converted into U.S. dollars at the exchange rates that were in effect when the arbitration award was issued. The Order and Judgment reflects no intent of the Court on that score, and converting the currencies at those rates now would require more than a "completely ministerial task" of "do[ing] the calculation and mak[ing] the amount official." Kosnoski v. Howley, 33 F.3d 376, 379 (4th Cir. 1994). Instead, it would require making a substantive determination about Continental's rights not previously rendered.

This conclusion does not necessarily mean that Continental's request is doomed. Continental filed its motion twenty days after the entry of Judgment, and the Court therefore could construe it as a Rule 59(e) motion to alter or amend the judgment.[4] A motion under Rule 59(e) "need not be granted unless the Court finds that there is 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" MDB Comm'ns, Inc. v. Hartford Cas. Ins. Co., 531 F. Supp. 2d 75, 79 (D.D.C. 2008) (quoting Ciralsky v. Central Intelligence Agency, 355 F.3d 661, 671 (D.C. Cir. 2004)). The parties have not briefed the question of whether Continental's request for

---

[4]  While disclaiming Nigeria's suggestion that its motion "is really a disguised motion under Rule 59," Continental also notes the timeliness of its motion under that Rule. See Reply at 4-5.

conversion of the foreign currency awards into U.S. dollars at the specified exchange rates meets these standards. Nor have they adequately briefed the threshold question of whether Continental was entitled to conversion of the foreign currencies at those exchange rates in the first place. Rather than deny Continental's request, the Court will hold this part of Continental's motion in abeyance pending supplemental briefing on these two issues.

*B. Prejudgment Interest*

As explained above, Continental requests that the Court enter a corrected judgment of roughly $423 million, of which over $172 million constitutes prejudgment interest on the arbitration award, accruing from the date of that award until the date of this Court's Judgment. See Mot. at 3-4; Hankin Decl. ¶¶ 7-8. Continental maintains that the applicable prejudgment interest rate is eighteen percent. This rate, according to Continental, "was the rate utilized in the Award, was identified by the Amended Complaint and on summary judgment . . . and was not objected to by Nigeria." Mot. at 3-4. Much of that statement is misleading.[5] And in any event, binding precedent prevents the Court from correcting its Judgment under Rule 60(a) to add the prejudgment interest that Continental seeks.

---

[5] It is true that Continental's complaint and amended complaint asked for prejudgment interest at a rate of eighteen percent, as did the proposed order Continental submitted at summary judgment. See Compl. at 7; Am. Compl. at 11; Proposed Order at 1. But Continental's entitlement to prejudgment interest was never briefed at summary judgment, much less the applicable interest rate, and so it cannot fairly be said that the rate "was not objected to by Nigeria," which opposed the entire confirmation of the arbitral award. Moreover, Nigeria has never admitted that an eighteen percent interest rate should apply to an award of prejudgment interest in this case. As discussed below, although Nigeria agrees that the arbitral panel included pre-award interest at that rate within the award, it argues that the panel did not grant *post-award* interest at this or any other rate.

In Osterneck v. Ernst & Whinney, 489 U.S. 169 (1989), the Supreme Court ruled that a postjudgment motion for discretionary prejudgment interest is properly regarded as a Rule 59(e) motion to alter or amend the judgment, because prejudgment interest "'is an element of [plaintiff's] complete compensation,'" id. at 175 (quoting West Virginia v. United States, 479 U.S. 305, 310 & n.2 (1987)), and because a motion for discretionary prejudgment interest therefore "involves the kind of reconsideration of matters encompassed within the merits of a judgment to which Rule 59(e) was intended to apply." Id. at 176.  The Court in Osterneck also expressed the view that even where prejudgment interest is *mandatory* under the relevant law it must be pursued through Rule 59(e) when sought after judgment. See id. at 176 n.3 ("We do not believe the result should be different where prejudgment interest is available as a matter of right. . . . [M]andatory prejudgment interest, no less than discretionary prejudgment interest, serves to 'remedy the injury giving rise to the underlying action.'") (quoting Budinich v. Becton Dickinson & Co., 486 U.S. 196, 200 (1988)).

The D.C. Circuit, like others, has applied Osterneck's dictum to hold that even where prejudgment interest is mandatory, a judgment that is silent about such interest cannot be altered to include it through Rule 60(a). In Winslow v. FERC, 587 F.3d 1133 (D.C. Cir. 2009), the district court awarded back pay to the plaintiff but its judgment did not mention prejudgment interest.  Several years later, the plaintiff moved for prejudgment interest, which he argued was mandatory under the Back Pay Act.  The employee filed his motion long after the deadline for Rule 59(e) motions had expired, and he argued on appeal that his motion was better categorized as a Rule 60(a) motion, which would not have been time-barred.  The Court of Appeals, however, adhered to the view expressed in Osterneck, declining to set aside that "carefully

9

considered language" as dictum and noting that "[t]he five other courts of appeals to consider the question have reached the same result."  Id. at 1135, 1136 (citing cases).

Continental's request is barred by Winslow and is not saved by the fact that, unlike the plaintiff in Winslow, Continental requested prejudgment interest in its complaint. Even if Winslow leaves any room for exceptions, the mere inclusion of a request for prejudgment interest in a complaint does not warrant such an exception, particularly where the request was not addressed in the parties' summary judgment papers.  "Even if a plaintiff includes a demand for pre-decision interest in its complaint, '[s]uch requests obviously may be overlooked or denied, and the absence of a provision for [such] interest in any of the court's [orders] is entirely consistent with the hypotheses that the court either was unaware of the request or intended simply to deny it."  Paddington Partners v. Bouchard, 34 F.3d 1132, 1140 (2d Cir. 1994) (quoting In re Frigitemp Corp., 781 F.2d at 328).  "'In either case, the failure of [a] Judgment to award such interest is an accurate reflection of the court's decision,' and hence can not be corrected under Rule 60(a).'"  Id. (quoting In re Frigitemp Corp., 781 F.2d at 328).

Before the Court could grant prejudgment interest, moreover, it would need to determine the interest rate to which Continental is entitled.  Because prejudgment interest "is an element of [plaintiff's] complete compensation," Osterneck v. Ernst & Whinney, 489 U.S. at 175, making that determination now would obligate the Court to "reexamine . . . matters encompassed within the merits of the underlying action."  Id. at 176.  At summary judgment, the parties simply did not brief the issue of Continental's entitlement to prejudgment interest, much less the rate that would apply to such interest if it were granted, and the Court's Judgment therefore cannot be taken to have ruled on that matter *sub silentio*.

As with respect to Continental's first request, however, the Court can construe Continental's request for prejudgment interest as having been advanced under Rule 59(e).  But here again, the parties have not briefed whether that request satisfies the demanding requirements of Rule 59(e) for altering or amending a judgment.  Nor have they adequately addressed the preliminary question of whether Continental was entitled to prejudgment interest at the specified interest rate at the time of Judgment.  Continental asserts, without contradiction from Nigeria, that the award it received from the arbitral panel included interest at a rate of eighteen percent.  See Compl. at 6, 7; Am. Compl. at 6, 11; Mot. at 2.  Continental's Rule 60(a) motion suggests that the arbitral panel also granted *post-award* interest at the same rate, and that therefore this Court should grant post-award, prejudgment interest at that rate.  See Mot. at 3-4; Hankin Decl. ¶ 7.  Nigeria responds that the arbitral panel "granted Plaintiff pre-award interest but **did not** grant any *post award* interest, let alone a post award interest of 18% as claimed by Plaintiff."  Opp. at 2-3.

Continental's reply appears to concede this point, and tellingly cites nothing in the arbitration award or the U.K. judgment that mentions post-award interest.  Instead, Continental's reply raises two entirely new arguments: that U.S. courts routinely grant prejudgment interest in actions to confirm arbitration awards under the New York Convention, and that such interest is mandatory in this case under D.C. Code § 15-108.  See Reply at 6-7.  If Continental is entitled to prejudgment interest, it claims, there is "no reason" why this Court should not "use the same rate for post-award, pre-judgment interest" that the arbitral panel used for pre-award interest.  Id. at 7.

Even if Continental's new arguments about its original entitlement to prejudgment interest have merit, neither party has addressed how the company's present request for such

interest fares under the strict standards of Rule 59(e).  Furthermore, Nigeria has not had an opportunity to respond to the new arguments raised for the first time in Continental's reply about the basis for its purported right to prejudgment interest.  The Court therefore concludes that supplemental briefing on these two questions is warranted, and it will hold in abeyance Continental's request for prejudgment interest until the parties have completed such briefing.

*C.  Postjudgment Interest*

Continental also seeks an award of postjudgment interest, see Mot. at 2, which it requested in its complaint and in the proposed order that accompanied its motion for summary judgment.  See Am. Compl. at 11; Compl. at 8; Proposed Order at 1.

In contrast to prejudgment interest, the award of which generally "'is subject to the discretion of the court and equitable considerations,'" Oldham v. Korean Air Lines Co., Ltd., 127 F.3d 43, 54 (D.C. Cir. 1997) (quoting Motion Picture Ass'n of Amer., Inc. v. Oman, 969 F.2d 1154, 1157 (D.C. Cir. 1992)), postjudgment interest is mandated by 28 U.S.C. § 1961(a), which provides:

> Interest shall be allowed on any money judgment in a civil case recovered in a district court. . . .  Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment. The Director of the Administrative Office of the United States Courts shall distribute notice of that rate and any changes in it to all Federal judges.

28 U.S.C. § 1961(a).  The language of Section 1961(a), which states that interest "shall" be allowed on any money judgment, "is mandatory, not discretionary."  Ministry of Defense and

Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Defense Systems, Inc., 665 F.3d 1091, 1102 (9th Cir. 2011).  A judgment confirming an arbitration award is a "money judgment" within the meaning of Section 1961(a).  Id. at 1101-02 (affirming grant of postjudgment interest in action to confirm foreign arbitration award under the New York Convention).[6]

        Significantly for present purposes, postjudgment interest lacks the qualities of prejudgment interest that prevent the latter from being obtained through Rule 60(a).  Unlike prejudgment interest, postjudgment interest is not "an element of [plaintiff]'s complete compensation" or "intertwined in a significant way with the merits of the plaintiff's primary case [or] the extent of his damages."  Osterneck v. Ernst & Whinney, 489 U.S. at 991, 992.  Postjudgment interest is more akin to attorney's fees or costs, requests for which "raise legal issues collateral to the main cause of action," White v. New Hampshire Dep't of Employment Sec., 455 U.S. 445, 451 (1982), and accordingly do not fall within Rule 59(e) when pursued after judgment.  Buchanan v. Stanships, Inc., 485 U.S. 265, 268 (1988) (holding that a postjudgment motion for costs, like one for attorney's fees, "'does not imply a change in the judgment, but merely seeks what is due *because of* the judgment.'") (quoting White v. New Hampshire Dep't of Employment Sec., 455 U.S. at 452).

---

[6] This is true notwithstanding that the court's judgment "merely confirm[s] the arbitration award" and "does not specify the dollar amount of the award."  Ministry of Defense and Support v. Cubic Defense Systems, Inc., 665 F.3d at 1101 n.7.  Confirmation of an arbitration award "is a summary process that converts a final arbitration award into a judgment of the court.  Once the award is confirmed, the judgment has the same force and effect of a judgment in a civil action[.]"  Id. at 1095 n.1.

Indeed, postjudgment interest has been awarded on attorney's fees and costs themselves, see Air Separation, Inc. v. Underwriters at Lloyd's of London, 45 F.3d 288, 290 (9th Cir. 1995), highlighting the extent to which such interest "rais[es] issues wholly collateral to the judgment in the main cause of action." Osterneck v. Ernst & Whinney, 489 U.S. at 991. See First State Bank of Monticello v. Ohio Cas. Ins. Co., 555 F.3d 564, 572 (7th Cir. 2009) ("'[P]rejudgment interest, *unlike post-judgment interest*, normally is considered an element of the judgment itself, that is, of the relief on the merits.") (emphasis added); Matter of Stoecker, 5 F.3d 1022, 1026-27 (7th Cir. 1993) ("Postjudgment interest, however, is compensation for delay in the collection of the judgment, and is therefore collateral, like the award of attorney's fees."); United States v. Entze, No. 06-0030, 2006 WL 931863, at *3 (D.N.D. Jan. 9, 2006) ("There is a difference between prejudgment interest and postjudgment interest in that the former is a part of the determination of the case on the 'merits.'"); Southern Industries of Clover, Ltd. v. Hardick, No. 92-5750, 1999 WL 76891, at *2 (S.D.N.Y. Feb. 8, 1999) ("As distinguished from postjudgment interest, prejudgment interest is normally considered to be an element of the judgment itself, viz., relief on the merits, and hence is governed by Rule 59(e).").

Nigeria challenges Continental's request for postjudgment interest in only the most cursory fashion: it simply points out that the Court did not award such interest in the Judgment and contends, without explanation, that doing so would have contradicted the arbitration award and the U.K. judgment. See Opp. at 5. Because Continental was statutorily entitled to an award of postjudgment interest, and because making this determination now does not require the Court to revisit the merits of Continental's claim, the Court's failure to provide for such interest can be characterized as a "mistake arising from oversight or omission." FED. R.

CIV. P. 60(a). The Court therefore will correct its Order and Judgment to include an award of postjudgment interest as required by 28 U.S.C. § 1961(a).[7]

The Court will not enter a corrected Judgment, however, until the matters discussed in the first two sections of this Opinion have been briefed by the parties and resolved by the Court.

III.  CONCLUSION

For the foregoing reasons, Continental's motion will be granted in part and held in abeyance in part. An Order consistent with this Opinion shall issue this same day.

SO ORDERED.

/s/
PAUL L. FRIEDMAN
United States District Judge

DATE:   March 27, 2012

---

[7] As discussed in the previous two sections, Continental's motion was filed sufficiently early for the Court to consider it under Rule 59(e). Even if postjudgment interest were not available through Rule 60(a), the Court would amend its Judgment pursuant to Rule 59(e) to grant Continental's request in light of Continental's statutory entitlement to postjudgment interest, its consistent requests for such interest, and the lack of any reason for the parties to have briefed this issue at summary judgment. See O'Sullivan Corp. v. Duro-Last, Inc., 7 Fed. Appx. 509, 519-20 (6th Cir. 2001) ("Given that the district court was required under both state and federal law to award . . . post-judgment interest, it should have granted O'Sullivan's motion to alter or amend the original judgment."); Lentz v. City of Cleveland, No. 04-0669, 2011 WL 4631917, at *7 (N.D. Ohio Sept. 30, 2011) (granting postjudgment interest under Rule 59(e) motion).