UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                      )
CONTINENTAL TRANSFERT TECHNIQUE       )
LIMITED,                                              )
                                                      )
        Plaintiff,                                    )
                                                      )
        v.                                            )        Civil Action No. 08-2026 (PLF)
                                                      )
FEDERAL GOVERNMENT OF NIGERIA *et al.*,   )
                                                      )
        Defendants.                                   )
_____ )

OPINION

        This matter is before the Court on a motion by plaintiff Continental Transfert

Technique Limited to amend the Court's Order and Judgment of August 3, 2011.  In an earlier

Opinion, the Court granted the motion in part and held the remainder of the motion in abeyance

pending supplemental briefing.  See Continental Transfert Technique Ltd. v. Federal

Government of Nigeria, 850 F. Supp. 2d 277 (D.D.C. 2012).  The Court now grants the

remainder of Continental's motion in part and denies it in part.  An Amended Judgment

accompanies this Opinion.[1]

_____

        [1]        The papers reviewed in connection with this matter include the plaintiff's Rule
60(a) motion ("Mot.") [Dkt. No. 48]; the declaration accompanying that motion ("Hankin
Decl.") [Dkt. No. 48-1]; the defendants' opposition ("Opp.") [Dkt. No. 50]; the plaintiff's reply
("Reply") [Dkt. No. 52]; the plaintiff's supplemental memorandum ("Pl.'s Supp. Mem.") [Dkt.
No. 58]; the defendants' supplemental memorandum ("Defs.' Supp. Mem.") [Dkt. No. 59]; the
plaintiff's supplemental reply memorandum ("Pl.'s Supp. Reply Mem.") [Dkt. No. 60]; the
plaintiff's original complaint ("Compl.") [Dkt. No. 1]; the plaintiff's amended complaint ("Am.
Compl.") [Dkt. No. 31]; the defendants' answer to the amended complaint ("Answer") [Dkt. No.
39]; the plaintiff's motion for summary judgment ("MSJ") [Dkt. No. 40]; the defendants'
opposition to summary judgment ("MSJ Opp.") [Dkt. No. 42]; and the plaintiff's proposed order
submitted with its motion for summary judgment ("Proposed Order") [Dkt. No. 40-14].

Background on this case and the pending motion can be found in the Court's earlier opinions and will not be repeated here except as follows.[2]  Continental initiated this action under the Federal Arbitration Act, 9 U.S.C. §§ 201 *et seq.* ("FAA") — which codifies the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the New York Convention") — to confirm a 2008 arbitral award that it obtained in the United Kingdom against the defendants (collectively, "Nigeria").  Continental also sought to enforce, under the District of Columbia's Uniform Foreign-Money Judgments Recognition Act, D.C. CODE §§ 15-381 *et seq.* ("UFMJRA"), a 2009 judgment by the United Kingdom's High Court of Justice that confirmed the arbitral award as final and enforceable.  See Am. Compl. ¶¶ 1-2.

In an Order and Judgment dated August 3, 2011, the Court granted Continental's motion for summary judgment.  The Order and Judgment stated simply that the arbitral award was confirmed in its entirety and that the judgment issued by the High Court of Justice was enforceable under the UFMJRA.  See Order and Judgment (Aug. 3, 2011).  Continental promptly moved to amend the Order and Judgment under Rule 60(a) of the Federal Rules of Civil Procedure in order to, in its words, "correct the judgment to reflect the amount of $423,184,115.29 plus applicable post-judgment interest."  Mot. at 2.  This motion, the Court explained, comprised "three distinct requests."  Continental Transfer Technique Limited v. Federal Government of Nigeria, 850 F. Supp. 2d at 281.  First, Continental was requesting that the portions of its arbitral award granting certain sums in foreign currencies be converted into U.S. dollars, at the exchange rates that were in place on the date of the award.  Second, Continental was seeking post-award, prejudgment interest on the arbitral award, at an interest

---

[2]      See Continental Transfer Technique Limited v. Federal Government of Nigeria, 850 F. Supp. 2d 277 (D.D.C. 2012); Continental Transfer Technique Limited v. Federal Government of Nigeria, 800 F. Supp. 2d 161 (D.D.C. 2011); Continental Transfer Technique Limited v. Federal Government of Nigeria, 697 F. Supp. 2d 46 (D.D.C. 2010).

rate of eighteen percent.  Third, Continental was requesting postjudgment interest on the entire

amount.  See id. at 281-82.

　　　　　　　The Court concluded that Continental was entitled under Rule 60(a) to correction

of the Order and Judgment in order to include an award of postjudgment interest as mandated by

statute, but that its first two requests could not be granted under that Rule.  Continental Transfer

Technique Limited v. Federal Government of Nigeria, 850 F. Supp. 2d at 282-88.  Although

those requests did not fall within the purview of Rule 60(a), the Court determined that because

Continental filed its motion within the time limit required for a motion to alter or amend the

judgment under Rule 59(e), the Court might be able to treat the motion as one brought under that

Rule.  The parties, however, had not briefed the question of whether the stringent standards of

Rule 59(e) were met, nor had they adequately briefed the underlying questions of whether

Continental was entitled in the first place to prejudgment interest or conversion of its award into

U.S. currency.  The Court therefore held those two requests in abeyance, id. at 284, 286, and

directed the parties to file supplemental memoranda addressing the following questions:

> (1) whether Continental was entitled at the time of judgment to conversion of its foreign-currency awards into U.S. dollars at the specified exchange rates;
>
> (2) whether Continental's request for such conversion after judgment satisfies the requirements of Rule 59(e) for altering or amending a judgment;
>
> (3) whether Continental was entitled at the time of judgment to prejudgment interest at a rate of eighteen percent; and
>
> (4) whether Continental's request for such interest after judgment satisfies the requirements of Rule 59(e) for altering or amending a judgment.

Order (Mar. 27, 2012).  The parties have filed their supplemental memoranda.  In view of their

arguments, the applicable law, and the entire record in this case, the Court concludes that

Continental was entitled at the time of judgment to part of the relief it has requested, and that it has met the standards for obtaining that relief under Rule 59(e).

## I.  CONVERSION OF ARBITRAL AWARD INTO UNITED STATES DOLLARS

### A.  Continental's Entitlement to Conversion of its Foreign Currencies

In the proposed order that it submitted with its motion for summary judgment, Continental requested that the portions of its arbitral award providing for amounts in British pounds and Nigerian naira be converted into U.S. dollars.  See Proposed Order at 1.  Conversion of such foreign currency amounts into dollars at judgment is the norm, rather than the exception. Elite Entertainment, Inc. v. Khela Bros. Entertainment Inc., 396 F. Supp. 2d 680, 694 (E.D. Va. 2005) ("[C]ourts . . . agree that entering judgment in a foreign currency is strongly disfavored."). Traditionally, even when a losing defendant's obligation was denominated in a foreign currency, most American courts "assumed that American judgments must be entered in dollars," an assumption that likely rested in part "on the now repealed section 20 of the Coinage Act of 1792."  Competex, S.A. v. Labow, 783 F.2d 333, 337 (2d Cir. 1986); see, e.g., Int'l Silk Guild v. Rogers, 262 F.2d 219, 224 (D.C. Cir. 1958) ("Once the District Court found Asahi Japan obligated to pay the Guild Y80,323.09, it was confronted with the problem of converting the yen into dollars, for American courts are permitted to render judgments only in dollars.") (citing Section 20).  While that rule no longer holds sway as an absolute proposition, see, e.g., Mitsui & Co., Ltd. v. Oceantrawl Corp., 906 F. Supp. 202, 203-04 (S.D.N.Y. 1995), most judgments still are entered in U.S. dollars.  See Elite Entertainment, Inc. v. Khela Bros. Entertainment Inc., 396 F. Supp. 2d at 694; RESTATEMENT (THIRD) OF THE FOREIGN RELATIONS LAW OF THE UNITED STATES § 823(1) (1987) ("RESTATEMENT") ("Courts in the United States ordinarily give judgment on causes of action arising in another state, or denominated in a foreign currency, in

4

United States dollars, but they are not precluded from giving judgment in the currency in which the obligation is denominated or the loss was incurred.").

According to the Restatement, "a judgment in a foreign currency should be issued only when requested by the judgment creditor[.]" RESTATEMENT § 823 cmt. b.  Here, Continental made no such request — quite the opposite.  Moreover, the values of the British pound and the Nigerian naira have declined relative to the dollar in recent years.  Refusing to convert Continental's award into dollars, therefore, would effectively reduce the value of the award.[3]  That result would run counter to the Restatement's direction that when a decision is made to convert the foreign currency into U.S. dollars, the choice of conversion rate should be animated by the need "to make the creditor whole and to avoid rewarding a debtor who has delayed in carrying out the obligation." RESTATEMENT § 823(2).  Entering judgment in the now-depreciated naira and pound, when Continental specifically requested a dollar amount, finds no support in the case law and is contrary to the sensible policies articulated in the Restatement. The Court therefore concludes that Continental was entitled, as it requested, to conversion of the foreign currency portions of its arbitral award into dollars.  See G.E. Transport S.P.A. v. Republic of Albania, 693 F. Supp. 2d 132, 139-40 (D.D.C. 2010) (adopting Restatement approach and converting portion of arbitral award that was stated in Euros into dollars).

The more intricate question is what exchange rates to use in converting the naira and pound into dollars.  Answering this question requires selecting the proper date for which the corresponding exchange rates prevailing on that date should be employed.  Two options emerge from a pair of Supreme Court decisions, both authored by Justice Oliver Wendell Holmes, Hicks v. Guinness, 269 U.S. 71 (1925), and Deutsche Bank Filiale Nurnberg v. Humphrey, 272 U.S.

---

[3]       The naira's drop, in particular, along with the size of the award, means that tens of millions of dollars hinge on whether the award is converted and, if so, at what exchange rate.

517 (1926).  The rule applied in <u>Hicks</u> is often referred to as the "breach day" rule, while that of

<u>Deutsche Bank</u> is referred to as the "judgment day" rule.  <u>ReliaStar Life Ins. Co. v. IOA Re, Inc.</u>,

303 F.3d 874, 883 (8th Cir. 2002).  Under the "breach day" rule, the applicable exchange rate is

the one that was in effect on the date that the defendant breached its obligations to the plaintiff.

<u>Id</u>. (citing <u>Hicks v. Guinness</u>, 269 U.S. at 80).  And in the context of international arbitration

awards, one judge of this Court has concluded that the defendant is deemed to have breached its

obligation on the date the arbitral award issued, which is when the defendant's obligation arose.

<u>G.E. Transport S.P.A. v. Republic of Albania</u>, 693 F. Supp. 2d at 140; <u>cf</u>. <u>S.A.R.L. Aquatonic</u>

<u>Laboratoires v. Marie Katelle, Inc.</u>, No. 06-0640, 2007 WL 2410373, at *2 (D. Ariz. Aug. 21,

2007) (using date of foreign judgment as "breach date" in action to enforce that judgment).  The

reasoning is that it is the New York Convention, by way of the Federal Arbitration Act, that

gives rise to the plaintiff's entitlement to judgment, not any underlying transgression by the

defendant that the parties contested during the arbitration itself.  Using this approach, the breach

date here would be August 14, 2008, the date of Continental's arbitral award.

      Under the "judgment day" rule, by contrast, the exchange rate to be applied is the

one prevailing on the date that the court enters judgment for the plaintiff.  <u>ReliaStar Life Ins. Co.</u>

<u>v. IOA Re, Inc.</u>, 303 F.3d at 883 (citing <u>Deutsche Bank Filiale Nurnberg v. Humphrey</u>, 272 U.S.

at 519-20).  Here, that would be almost three years later than under the "breach day" rule,

August 3, 2011, the date of this Court's Order and Judgment.

      The Restatement on Foreign Relations Law counsels that in selecting between the

"breach day" rule and the "judgment day" rule, intervening currency fluctuations should be taken

into account for equitable reasons:  "If, in a case arising out of a foreign currency obligation, the

court gives judgment in dollars, the conversion from foreign currency to dollars is to be made at

such rate as to make the creditor whole and to avoid rewarding a debtor who has delayed in carrying out the obligation."  RESTATEMENT § 823(2); see RESTATEMENT § 823 cmt. c. ("In general, if the foreign currency has depreciated since the injury or breach, judgment should be given at the rate of exchange applicable on the date of injury or breach.").  Thus, in order to prevent a party either from being penalized or from receiving a windfall as a result of currency fluctuations, "the date used for conversion should depend on whether the currency of obligation has appreciated or depreciated relative to the dollar."  RESTATEMENT § 823 cmt. c.  Unless the interests of justice require otherwise, the "breach day" rule applies if the foreign currency has depreciated in value.  Id.; see id. cmt. d; see generally Siematic Mobelwerke GmbH & Co. KG v. Siematic Corp., 669 F. Supp. 2d 538, 541-43 (E.D. Pa. 2009) (surveying the case law applying the Restatement).

Judge Urbina followed the Restatement approach in G.E. Transport S.P.A. v. Republic of Albania, 693 F. Supp. 2d at 139-40, converting a portion of an arbitral award from Euros into dollars using the exchange rate in effect on the date of the arbitral award because the Euro had depreciated since then.  See also McKesson Corp. v. Islamic Republic of Iran, 116 F. Supp. 2d 13, 38 (D.D.C. 2000) (relying on Section 823 of the Restatement to answer a different question regarding exchange rates), rev'd in part on other grounds, McKesson HBOC, Inc. v. Islamic Republic of Iran, 271 F.3d 1101 (D.C. Cir. 2001).  Continental urges the Court to follow G.E. Transport, adopt the Restatement approach, and use the exchange rates for the pound and naira that were in effect on the date of the arbitral award.

The flexibility endorsed by the Restatement, however, arguably is in conflict with the approach dictated by both Hicks and Deutsche Bank.  See Carolyn B. Lamm, *Enforcement of Judgments*, *in* 5 BUSINESS AND COMMERCIAL LITIGATION IN FEDERAL COURTS § 57:37 (Robert L.

7

Haig ed., 3d ed. 2011) (contrasting the "flexible approach" of the Restatement with the rules derived from those two decisions).  Rather than equitably responding to currency fluctuations in order to ensure that a creditor is made whole, <u>Hicks</u> and <u>Deutsche Bank</u> direct courts to "look[] to the jurisdiction in which the plaintiff's cause of action arose to determine which rule is applicable."  <u>In re Good Hope Chem. Corp.</u>, 747 F.2d 806, 811 (1st Cir. 1984).  Under these precedents, it has been held, the "breach day" rule applies if "at the time of breach the plaintiff has a cause of action arising in this country under American law," while the "judgment day" rule applies if the defendant's obligation "arises entirely under foreign law."  <u>Id.</u>; <u>accord</u> <u>ReliaStar Life Ins. Co. v. IOA Re, Inc.</u>, 303 F.3d at 883; <u>Elite Entertainment, Inc. v. Khela Bros. Entertainment Inc.</u>, 396 F. Supp. 2d at 694.  While <u>Hicks</u> and <u>Deutsche Bank</u> are very old decisions, as Continental is quick to point out, the principles they established have been applied twice by our circuit.  <u>See</u> <u>Bamberger v. Clark</u>, 390 F.2d 485, 487-89 (D.C. Cir. 1968); <u>Reissner v. Rogers</u>, 276 F.2d 506, 511 (D.C. Cir. 1960).  Nigeria therefore maintains that <u>Hicks</u> and <u>Deutsche Bank</u> must be followed here rather than the Restatement, and that those cases require application of the "judgment day" rule, because this case "does not involve a breach of contract which occurred in the United States."  Defs.' Supp. Mem. at 4-5.

Unfortunately for Nigeria, the Court is not persuaded that this case presents any conflict between the <u>Hicks</u>/<u>Deutsche Bank</u> approach and the Restatement approach.  In the Court's view, both point toward use of the "breach day" rule.  As noted, "the judgment day rule applies only when the obligation arises entirely under foreign law.  If, however, at the time of breach the plaintiff has a cause of action arising in this country under American law, the breach day rule applies."  <u>Siematic Mobelwerke GmbH & Co. KG v. Siematic Corp.</u>, 669 F. Supp. 2d at 542 (quoting <u>In re Good Hope Chem. Corp.</u>, 747 F.2d at 811); <u>see</u> <u>Ventas, Inc. v. HCP, Inc.</u>, 647

F.3d 291, 322 (6th Cir. 2011) ("[I]f the cause of action arises under U.S. law, then the conversion date is the date of injury").  Unlike <u>Deutsche Bank</u> and the D.C. Circuit cases applying the "judgment day" rule in reliance on it, this is not an action in which a plaintiff has come to a United States court to adjudicate rights arising under foreign law.  Rather, this action arises under the Federal Arbitration Act and the Uniform Foreign-Money Judgment Recognition Act.  The FAA implements the New York Convention by allowing international arbitral awards to be enforced in United States courts, 9 U.S.C. § 201, and it provides that "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States."  9 U.S.C. § 203.

While the original dispute between Continental and Nigeria may have involved questions of Nigerian law — which their contract specified would govern any disputes that were referred to arbitration, <u>see</u> MSJ, Ex. 4 ¶ 7 — Continental's right of action here derives entirely from U.S. law, namely the right to have an arbitral award that meets certain criteria be confirmed by a United States district court.  Under the FAA and the New York Convention, the confirming court does not adjudicate the underlying legal disputes between the parties or even review the arbitrator's conclusions.  Instead, the court must confirm the award "unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention."  9 U.S.C.A. § 207; <u>see</u> <u>DRC, Inc. v. Republic of Honduras</u>, 774 F. Supp. 2d 66, 71-72 (D.D.C. 2011) (explaining entitlement to confirmation of arbitral awards under the FAA); <u>Global Distressed Alpha Fund I LP v. Red Sea Flour Mills Co. Ltd.</u>, 725 F. Supp. 2d 198, 201-03 (D.D.C. 2010) (same).  Therefore, regardless of the circumstances that led Continental and Nigeria to submit to arbitration initially, Continental's cause of action in this Court arises exclusively under United States law; the "breach day" rule therefore applies.  <u>See</u> <u>In re Good</u>

9

Hope Chem. Corp., 747 F.2d at 811-12; ReliaStar Life Ins. Co. v. IOA Re, Inc., 303 F.3d at 883;

Jamaica Nutrition Holdings, Ltd. v. United Shipping Co., Ltd., 643 F.2d 376, 381 (5th Cir.

1981); Conte v. Flota Mercante Del Estado, 277 F.2d 664, 670-71 (2d Cir. 1960); cf. Reissner v.

Rogers, 276 F.2d at 511 ("[W]e have applied th[e] so-called 'judgment day rule' in converting

into dollars *a foreign currency claim created by foreign law*.") (emphasis added).  Because

Continental had a cause of action under U.S. law as soon as the arbitral award issued, the "breach

day" rule applies.[4]

       In this case, where the foreign currency has depreciated significantly since the

date of the arbitral award, following the Restatement's guidance would result in the same

outcome as the application of Hicks and Deutsche Bank.  Using the "breach day" rule will more

fully "make the creditor whole" and "avoid rewarding a debtor who has delayed in carrying out

the obligation."  RESTATEMENT § 823(2).  There is no indication of gamesmanship by

Continental or any attempt to profit from currency fluctuations; nor will Continental receive a

"windfall" under the "breach day" rule.  See id. cmt. c.  Continental simply will receive a

judgment that reflects the true value in dollars of the arbitral award at the time it issued, instead

of one whose value has eroded as a result of Nigeria's success in delaying its confirmation.  See

Ventas, Inc. v. HCP, Inc., 647 F.3d at 323 ("Setting the currency conversion rate as of the date of

---

[4]     Although at least two courts have employed Deutsche Bank's "judgment day" rule in this context, their decisions are not persuasive.  In Island Territory of Curacao v. Solitron Devices, Inc., 356 F. Supp. 1, 14 (S.D.N.Y. 1973), the court cited Deutsche Bank in selecting the "judgment day" rule, but the court provided no analysis and the issue does not appear to have been contested.  In Laminoirs-Trefileries-Cableries de Lens, S. A. v. Southwire Co., 484 F. Supp. 1063, 1070 (N.D. Ga. 1980), the court applied the "judgment day" rule in reliance on a formulation recited in a First Circuit opinion that the circuit later expressly disavowed in favor of a focus on the underlying cause of action.  See In re Good Hope Chem. Corp., 747 F.2d at 810 ("In [the earlier case] we merely acquiesced in a formulation advanced by one side without effective opposition from the other.  The issue was never litigated.").

injury . . . prevents bad faith attempts to, for instance, delay the entry of judgment to engage in currency speculation.").

In sum, the Court concludes that under <u>Hicks</u>, <u>Deutsche Bank</u>, and the Restatement it is appropriate to convert Continental's foreign currency award using the exchange rates prevailing on the date of the "breach," which in the context of an arbitral award confirmation means the day that the award issued, here August 14, 2008.  The parties agree on the exchange rates that were in effect on that date: ₦118.654 to $1 and £0.53 to $1.  <u>See</u> MSJ at 27-34 ("Pl.'s Stmnt. Facts") ¶ 16; MSJ Opp., Ex. 1 ("Defs.' Stmnt. Facts") ¶ 16.  Using those rates, the naira and pound amounts provided in the arbitral award translate into $249,971,903.24 and $303,384.60, respectively.  When combined with the portion of the award that already was stated in dollars, $247,500.00 (representing Continental's arbitration costs), the total is $250,522,787.84.

### B.  Continental's Entitlement to Currency Conversion under Rule 59(e)

Even though Continental was entitled to conversion of the foreign currency portions of its arbitral award into dollars at the time of judgment, that does not automatically mean it may obtain such relief in a postjudgment motion under Rule 59(e).  A motion to alter or amend the judgment under that Rule "need not be granted unless the Court finds that there is 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'"  <u>MDB Comm'ns, Inc. v. Hartford Cas. Ins. Co.</u>, 531 F. Supp. 2d 75, 79 (D.D.C. 2008) (quoting <u>Ciralsky v. Central Intelligence Agency</u>, 355 F.3d 661,

671 (D.C. Cir. 2004)).  In this case, the Court agrees with Continental that granting its request is

necessary to prevent a manifest injustice, satisfying Continental's burden under Rule 59(e).[5]

      The proposed order that Continental submitted with its summary judgment motion

awarded Continental a dollar amount corresponding to the combined value of its arbitral award

after conversion into U.S. currency.  See Proposed Order at 1.  As explained above, the

presumption is that a United States judgment will convert monetary amounts denominated in a

foreign currency into dollars, just as Continental requested.  Nigeria raised no objection to this

aspect of Continental's motion for summary judgment and presented no authority weighing

against it.  Nevertheless, the Court's Order and Judgment merely stated that the arbitral award

was confirmed, ignoring the specific terms of Continental's proposed order.  Part of the value,

however, of requiring every motion to be accompanied by a proposed order (as Local Civil Rule

7(c) of this Court does) is that it puts the Court and opposing counsel on notice of precisely what

the party is seeking.  The Court's failure to address Continental's specific request before entering

judgment counsels in favor of amending that judgment now, if failure to do so would harm

Continental.

      As to that harm, because the values of the naira and the pound have depreciated

relative to the dollar since the date of the arbitral award, denying Continental's conversion

---

[5]    Nigeria briefly makes the meritless contention that the Court cannot or should not consider Continental's Rule 60(a) motion under Rule 59(e).  "A post-judgment motion," however, "may be treated as made pursuant to either Fed. R. Civ. P. 59 or 60 — regardless of how the motion is styled by the movant — depending on the type of relief sought."  Mays v. U.S. Postal Service, 122 F.3d 43, 46 (11th Cir. 1997); accord Companion Health Services, Inc. v. Kurtz, 675 F.3d 75, 87 (1st Cir. 2012) ("[A]lthough styled as a motion under Rule 60(a) . . . . [we] consider the motion to have been filed pursuant to Rule 59(e)[.]") (internal citation and quotation marks omitted); Matthew v. Unum Life Ins. Co. of Am., 639 F.3d 857, 863 & n.4 (8th Cir. 2011) (affirming district court's consideration of Rule 60(a) motion under Rule 59(e)); Hasbrouck v. Texaco, Inc., 879 F.2d 632, 635 (9th Cir. 1989) ("The nomenclature the movant uses is not controlling.").

request — or granting it but using the exchange rates in place on the date of the Order and Judgment — would significantly diminish the real value of Continental's judgment.  It also would reward Nigeria both for failing to make good on its payment obligations and for delaying confirmation of the award.  Nigeria has protracted these proceedings at every stage, first by failing to appear, and then by attempting to dismiss the case and forestall confirmation of the award through arguments that the Court has consistently found meritless, sometimes "border[ing] on the frivolous." Continental Transfer Technique Ltd. v. Federal Government of Nigeria, 697 F. Supp. 2d at 55; see also Continental Transfer Technique Ltd. v. Federal Government of Nigeria, 800 F. Supp. 2d at 164-65.

Given Continental's request for a judgment in U.S. currency, the established presumption in favor of such a request, Nigeria's failure to object earlier, and the fact that refusing Continental's request now would reward Nigeria's dilatory tactics and avoidance of its obligations, the Court will grant Continental's request for conversion of its award into the dollar amount stated above, in order to prevent a manifest injustice.

## II.  PREJUDGMENT INTEREST

### A.  *Continental's Entitlement to Prejudgment Interest*

"Unlike most other countries, the United States has no federal statute governing awards of prejudgment interest on international arbitral awards." Industrial Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH, 141 F.3d 1434, 1446 (11th Cir. 1998).  Because actions under the New York Convention "arise under the laws and treaties of the United States," see 9 U.S.C. § 203, "as in other federal question cases, whether to award prejudgment interest falls within the district court's discretion." Ministry of Defense and Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Defense Sys., Inc., 665 F.3d 1091, 1103 (9th Cir. 2011);

accord Industrial Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH, 141 F.3d at 1446-47;

Waterside Ocean Navigation Co. v. Int'l Navigation Ltd., 737 F.2d 150, 153-54 (2d Cir. 1984).

   Where prejudgment interest is available, the question of whether to award it "is

subject to the discretion of the court and equitable considerations." Oldham v. Korean Air Lines

Co., Ltd., 127 F.3d 43, 54 (D.C. Cir. 1997) (quoting Motion Picture Ass'n of Amer., Inc. v.

Oman, 969 F.2d 1154, 1157 (D.C. Cir. 1992)). "The purpose of such awards is to compensate

the plaintiff for any delay in payment resulting from the litigation." Id.; see Motion Picture

Ass'n of Amer., Inc. v. Oman, 969 F.2d at 1157 ("[I]nterest compensates for the time value of

money, and thus is often necessary for full compensation.").

   The circuits that have recognized the availability of prejudgment interest in

actions to confirm arbitral awards under the New York Convention have reasoned that in light of

"the widely accepted, remedial purpose of pre-judgment interest — which is to 'compensat[e]

the injured party for the loss of the use of money he would otherwise have had,'" a presumption

exists in favor of such interest. Ministry of Defense and Support for the Armed Forces of the

Islamic Republic of Iran v. Cubic Defense Sys., Inc., 665 F.3d at 1102 (quoting Frank Music

Corp. v. Metro-Goldwyn-Mayer Inc., 886 F.2d 1545, 1550 (9th Cir. 1989)). Therefore, "absent

any reason to the contrary," prejudgment interest "should normally be awarded when damages

have been liquidated by an international arbitral award." Industrial Risk Insurers v. M.A.N.

Gutehoffnungshutte GmbH, 141 F.3d at 1447; accord Waterside Ocean Navigation, 737 F.2d at

153-54; see Compagnie des Bauxites de Guinee v. Hammermills, Inc., No. 90-0169, 1992 WL

122712, at *8 (D.D.C. May 29, 1992) ("Courts have consistently allowed prejudgment interest in

actions brought to confirm arbitral awards."). Without a presumption in favor of such interest,

"the losing party in the arbitration has an incentive [to] withhold payment — a result contrary to

the purposes of the Convention." <u>Ministry of Defense and Support for the Armed Forces of the</u> <u>Islamic Republic of Iran v. Cubic Defense Sys., Inc.</u>, 665 F.3d at 1103.

The circuits that have spoken to this issue have also emphasized, however, that a district court's discretion to grant prejudgment interest "must be exercised in a manner consistent with the underlying arbitration award." <u>Ministry of Defense and Support for the Armed Forces</u> <u>of the Islamic Republic of Iran v. Cubic Defense Sys., Inc.</u>, 665 F.3d at 1103. Where, as here, an arbitral award grants pre-award interest but is "silent" on whether a party should recover post-award interest — *i.e.*, prejudgment interest — granting such prejudgment interest is consistent with the award. <u>Id.</u>; <u>Waterside Ocean Nav. Co., Inc. v. Int'l Nav. Ltd.</u>, 737 F.2d at 154.

In this case, the Court concludes that an award of prejudgment interest is justified in order to compensate Continental for the loss of its use of the money owed to it by Nigeria during the period between the issuance of the arbitral award and this Court's Order and Judgment. <u>See</u> <u>G.E. Transport S.P.A. v. Republic of Albania</u>, 693 F. Supp. 2d at 140 (finding prejudgment interest warranted in action confirming arbitral award under New York Convention); <u>Compagnie des Bauxites de Guinee v. Hammermills, Inc.</u>, 1992 WL 122712, at *8 (same). Because Continental's arbitral award remained silent about the matter of post-award interest, <u>see</u> MSJ, Ex. 4 ¶¶ 79-86, 139, a grant of post-award (prejudgment) interest is consistent with the award. Such interest should run from August 28, 2008 (the date that payment on the arbitral award was due, <u>see</u> <u>id</u>. ¶ 139), until August 3, 2011 (the date of this Court's Order and Judgment confirming the award). <u>See</u> Am. Compl. at 11 (requesting prejudgment interest from August 28, 2008 to the date of judgment).

The next question is what rate of interest should apply to Continental's prejudgment interest award. Like the decision about whether to grant such interest at all, the

"decision on how to compute prejudgment interest is discretionary with the district court." G.E. Transport S.P.A. v. Republic of Albania, 693 F. Supp. 2d at 140 (quoting Forman v. Korean Air Lines Co., 84 F.3d 446, 450 (D.C. Cir. 1996)); see Pugh v. Socialist People's Libyan Arab Jamahiriya, 530 F. Supp. 2d 216, 265 (D.D.C. 2008) (citing Forman v. Korean Air Lines Co., 84 F.3d at 450).

This circuit has observed that "the prime rate, *i.e.*, the rate that banks charge for short-term unsecured loans to credit-worthy customers, is an appropriate measure of prejudgment interest." Oldham v. Korean Air Lines Co., Ltd., 127 F.3d at 54 (citing Forman v. Korean Air Lines Co., Ltd., 84 F.3d at 450); see Memorandum Order at 2-3, G.E. Transport S.P.A. v. Republic of Albania (D.D.C. Apr. 15, 2010) (applying prime rate in action confirming arbitral award under New York Convention).  Another option sometimes employed by courts in setting prejudgment interest is to borrow the rate of interest from the *postjudgment* interest statute, 28 U.S.C. § 1961, which calls for a rate equal to the weekly average one-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of judgment.  See, e.g., Sarhank Group v. Oracle Corp., No. 01-1285, 2004 WL 324881 (S.D.N.Y. Feb. 19, 2004) (using federal postjudgment rate from 28 U.S.C. § 1961 for prejudgment interest in arbitral confirmation under the Convention); In Matter of Arbitration Between P.M.I. Trading Ltd. v. Farstad Oil, Inc., No. 00-7120, 2001 WL 38282 (S.D.N.Y. Jan. 16, 2001) (same); see also Pugh v. Socialist People's Libyan Arab Jamahiriya, 530 F. Supp. 2d at 265 (accepting analysis of plaintiffs' damages expert and applying average annual Treasury Bill Rate, but noting that the higher prime rate "also would have been justified").

Although setting the rate of prejudgment interest is within a district court's discretion, our circuit has indicated a preference — all else being equal — for the use of the prime rate rather than the statutory postjudgment interest rate.  See Forman v. Korean Air Lines Co., Ltd., 84 F.3d at 450 ("Indeed, we think the Seventh Circuit is correct — that the prime rate is not merely as appropriate as the Treasury Bill rate, but *more* appropriate[.]") (citing In the Matter of Oil Spill by the Amoco Cadiz Off the Coast of France, 954 F.2d 1279, 1332 (7th Cir. 1992)); see In the Matter of Oil Spill, 954 F.2d at 1332 (stating that "a court should use the 'prime rate'" because it best approximates "the market rate," which "is what the victim must pay — either explicitly if it borrows money or implicitly if it finances things out of cash on hand — and [is] the rate the wrongdoer has available to it").  Because the Court discerns no particular circumstances here that weigh in favor of the postjudgment interest rate — particularly since application of that rate would be lower than application of the prime rate and thus disadvantage Continental and reward Nigeria for delaying payment of the award — the Court will utilize the prime rate.  Based on the information made available by the Federal Reserve, it appears that the average daily prime rate during the period from August 28, 2008 through August 3, 2011, was 3.375 percent.  See Board of Governors of the Federal Reserve System, Selected Interest Rates (Daily) - H.15, Historical Data, http://www.federalreserve.gov/releases/h15/data.htm.[6]

Continental argues that a prejudgment interest rate of eighteen percent should be employed instead, because that is the rate the arbitral panel used to calculate pre-award interest on the amounts owed by Nigeria.  The arbitral panel's selection of an eighteen percent interest

---

[6]     By contrast, were the Court to borrow the interest rate from the postjudgment interest statute, that rate would be 2.23 percent, which was the weekly average one-year constant maturity Treasury yield for the calendar week preceding August 11, 2008.  See Board of Governors of the Federal Reserve System, Selected Interest Rates (Daily) - H.15, Historical Data, http://www.federalreserve.gov/releases/h15/data.htm.

rate appears to have been based on lending rates in Nigeria during the time period preceding the award.  See MSJ, Ex. 4 ¶¶ 83, 85.  The evidence provided to the panel on that score has not been provided to this Court.  More importantly, as Continental itself points out, Pl.'s Supp. Reply Mem. at 7, post-award, prejudgment interest determinations rest not in the discretion of the arbitral panel but in the discretion of this Court.  And Continental offers absolutely no authority, nor any reasoning, to explain why the interest rate used by an arbitral panel for pre-award interest should be mimicked by a United States district court when granting post-award, prejudgment interest.  The Court therefore will follow the customary practice in arbitration confirmation proceedings under the New York Convention by setting the prejudgment interest rate with reference to the general standards governing prejudgment interest under U.S. law.  As explained above, in this circuit those standards lead to the prime rate in this case.

Using the average prime rate of 3.375 percent for the period between August 28, 2008 and this Court's Order and Judgment of August 3, 2011, with interest compounded annually, prejudgment interest on Continental's award comes to $25,588,853.12.  The total judgment in favor of Continental, therefore, including prejudgment interest, would have been $276,111,640.96 if the Court had granted prejudgment interest at that time.[7]

---

[7]     The Court has used the formula $M = P(1 + i)^n$, where "P" is Continental's principal award (250,522,787.84), "i" is the rate of interest (3.375), and "n" is the number of years that interest ran (2.93 years).  Compounding prejudgment interest annually is standard practice.  See, e.g., Pugh v. Socialist People's Libyan Arab Jamahiriya, 530 F. Supp. 2d at 265; Memorandum Order at 3, G.E. Transp. S.P.A. v. Republic of Albania (D.D.C. Apr. 15, 2010).

A spreadsheet attached to a declaration in support of Continental's motion appears — without explanation — to compound interest *monthly* at Continental's requested rate of eighteen percent, resulting in the ballooning of Nigeria's obligation into the $423,184,115.29 that Continental seeks.  There is no support for a monthly compounding of interest, and the Court rejects that approach.  Thus, even if the Court were to accept Continental's unsupportable request for a prejudgment interest rate of eighteen percent, it would compound it annually, not monthly.  That would yield prejudgment interest of $156,352,691.29 and a total judgment of $406,875,479.13.

18

### B.  Continental's Entitlement to Prejudgment Interest under Rule 59(e)

Again, the fact that Continental was entitled to prejudgment interest at the time of the Court's Order and Judgment does not, without more, mean that Continental can obtain that interest through a postjudgment motion.  But the same considerations that warrant granting Continental's first request (for conversion of its arbitral award into dollars) also apply here.  See supra at 11-13.  In fact, Continental's position is even stronger with respect to prejudgment interest, because Continental has unequivocally made known its desire for such interest throughout these entire proceedings, requesting it in the complaint, the amended complaint, and at summary judgment.  See Compl. at 8; Am. Compl. at 11; Proposed Order at 1.  Without prejudgment interest, Continental will not be fully reimbursed for its loss of the funds owed to it by Nigeria under the arbitral award — a result that would reward Nigeria for its delay and failure to pay.  Granting such interest now is necessary to prevent a manifest injustice, and the Court therefore will include it in an Amended Order and Judgment.

## III.  CONCLUSION

For the foregoing reasons, the Court holds that Continental is entitled to an amendment of the Court's Order and Judgment of August 3, 2011.  The Court therefore will enter an Amended Order and Judgment against Nigeria in the amount of $276,111,640.96 plus postjudgment interest.  To repeat, that sum was derived by converting the portions of Continental's arbitral award that were stated in British pounds and Nigerian naira into U.S. dollars, using the exchange rates that were in place on the date of the award.  Prejudgment interest was then added to this amount at an annually compounded rate of 3.375 percent, which was the average prime rate during the period from the date that payment was due on the arbitral

award to the date this Court entered judgment (August 28, 2008 to August 3, 2011).  Continental

also will be awarded postjudgment interest under 28 U.S.C. § 1961, beginning from August 3,

2011.

        An Amended Order and Judgment will issue this same day.

        SO ORDERED.


        /s/_____
        PAUL L. FRIEDMAN
DATE:  March 26, 2013        United States District Judge