## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**CONTINENTAL TRANSFERT**
**TECHNIQUE LIMITED,**

     **Plaintiff,**

          **v.**                  **Civil Action No. 08-2026 (PLF/GMH)**

**THE FEDERAL GOVERNMENT**
**OF NIGERIA** *et al.***,**

     **Defendants.**

## MEMORANDUM OPINION

On March 3, 2015, this case was referred to the undersigned for purposes of management of discovery and resolution of any discovery-related disputes.  Currently ripe for resolution is the defendants' motion to strike[1] the plaintiff's January 14, 2014, notice of deposition issued pursuant to Rule 30(b)(6).[2]  For the reasons stated below, the defendants' motion will be denied.

### I.      BACKGROUND

A.  <u>Procedural History</u>

On May 25, 1999, Continental Transfert Technique Limited, a Nigerian corporation with its principal place of business in Lagos, Nigeria ("plaintiff" or "Continental"), entered into a contract with the Federal Government of Nigeria, the Attorney General of the Federation, and Nigeria's Minister of the Interior (collectively, "defendants" or "Nigeria"), to create a

---

[1] Defendants' motion seeks to "strike" plaintiff's Rule 30(b)(6) deposition notice, rather than, more accurately, to quash it.  <u>See</u> <u>Tauro v. Baer</u>, Civ. No. 08-1545, 2009 WL 2410952, at *2 (W.D. Pa. Aug. 4, 2009) (a "motion to strike is only applicable to responsive pleadings"); Fed. R. Civ. P. 12(f).  The Court will treat the defendants' motion as a request to quash the deposition notice.  Nevertheless, to avoid confusion, the Court will refer to the defendants' motion in this Memorandum Opinion as a "motion to strike."

[2] On January 27, 2015, Judge Friedman denied as moot the defendants' request, appended to their motion to strike, for a protective order staying discovery pending an appeal to the United States Court of Appeals for the D.C. Circuit.  <u>See</u> Memorandum Opinion and Order (January 27, 2015) [Dkt. 84] at 1.

computerized residence permit and alien card system.  See Amended Complaint [Dkt. 31] at ¶¶ 7, 8, 11.  Disputes subsequently arose between the parties concerning performance of the contract.  On November 20, 2007, Continental initiated an arbitration in London, as provided by the terms of the contract, claiming that the defendants had failed to adequately perform.  Id. at ¶ 17.  On August 14, 2008, the arbiters awarded Continental approximately USD $252 million in damages, USD $247,500 in costs, and USD $238,007 for the cost of arbitration.  Id. at ¶¶ 23-27. On November 25, 2008, Continental brought suit in this court, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 201-208, which codifies the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, to enforce that 2008 arbitral award.  Id. at ¶ 1. Pursuant to the District of Columbia's Uniform Foreign-Money Judgments Recognition Act, D.C. Code §§ 15-1381 et seq., Continental also sought to enforce a 2009 judgment by the United Kingdom's  High Court of Justice that confirmed the arbitral award as final and enforceable.  Id. at ¶ 2.

In an Opinion issued on March 23, 2010, Judge Friedman rejected Nigeria's assertion that it was not amenable to suit in this matter because it had not waived sovereign immunity and concluded that jurisdiction was proper under the Foreign Sovereign Immunities Act (the "FSIA" or "the Act"), 28 U.S.C. §§ 1330, 1602 et seq.  See Opinion (March 23, 2010) [Dkt. 38] at 9.  In ruling that Nigeria may not invoke the defense of sovereign immunity to prevent enforcement of the arbitral award, the Court relied on section 1605(a)(6) of the FSIA.  Id.  That section provides that a foreign state shall be subject to the jurisdiction of the courts of the United States in a case "in which the action is brought . . . to confirm an award made pursuant to . . . an agreement to arbitrate, if . . . the agreement or award is . . . governed by a treaty or other international

agreement in force for the United States calling for the recognition and enforcement of arbitral awards." 28 U.S.C. § 1605(a)(6).

Thereafter, in an Amended Order and Judgment issued on March 26, 2013, Judge Friedman: (1) confirmed the August 14, 2008, arbitration award, (2) held that the arbitration award was enforceable under the D.C. Code, (3) converted the arbitral award into dollars, (4) awarded Continental post-judgment interest, and (5) entered judgment for Continental in the amount of USD $276,111,640.96.  See Amended Order and Judgment (March 26, 2013) [Dkt. 61] at 1-2.  On April 25, 2013, defendants appealed Judge Friedman's final order.  See Notice of Appeal [Dkt. 64].

During the pendency of the appeal, Continental served the Government of Nigeria with a notice of deposition pursuant to Rule 30(b)(6) and Rule 69(a)(2) of the Federal Rules of Civil Procedure seeking to discover information regarding Nigerian assets that could be used to satisfy the judgment.  See Notice of Rule 30(b)(6) Deposition [Dkt. 70-2].  It is that notice of deposition that is the subject of the present dispute between the parties.  On March 10, 2014, Nigeria filed a motion to strike Continental's deposition notice, and for a protective order against any further discovery in this case pending the outcome of the appeal.  See Memorandum in Support of Motion to Strike [Dkt. 70] at 1.

On March 13, 2014, the case was referred to now-retired Magistrate Judge John M. Facciola for management of discovery, including the adjudication of Nigeria's motion to strike. See Referral Order (March 13, 2014) [Dkt. 71].  On May 21, 2014, Magistrate Judge Facciola concluded that he lacked jurisdiction over the motion because the case was on appeal.  See Memorandum Opinion (May 21, 2014) [Dkt. 76] at 3.  Both parties subsequently filed objections to the Magistrate Judge's ruling.

On January 16, 2015, the Court of Appeals affirmed Judge Friedman's judgment and upheld his post-judgment rulings.  See generally Judgment (March 6, 2015) [Dkt. 90]. Importantly for resolution of the pending dispute, the D.C. Circuit agreed with Judge Friedman's March 23, 2010, Opinion rejecting Nigeria's invocation of sovereign immunity, and affirmed that section 1605(a)(6) of the FSIA grants jurisdiction over Continental's claim seeking to confirm its arbitral award under the Federal Arbitration Act.  Id. at 2 n.2.

Shortly thereafter, on January 27, 2015, Judge Friedman ruled on the parties' objections to Magistrate Judge Facciola's ruling, holding that Nigeria's request for a protective order from all post-judgment discovery pending its appeal was rendered moot by the Court of Appeals' January 16, 2015, decision, but that its motion to strike Continental's deposition notice remained pending.  See Memorandum Opinion and Order (January 27, 2015) [Dkt. 84] at 3.  Judge Friedman ordered the parties to file supplemental briefs addressing Nigeria's arguments, raised for the first time in its reply:  (1) whether a foreign sovereign is the proper subject of a Rule 30(b)(6) notice of deposition, and (2) whether Nigeria had waived this argument by failing to raise it in its initial brief in support of its motion to strike.  Id. at 4-5.  On March 3, 2015, Judge Friedman referred the motion to strike, and any future discovery disputes, to this Court for adjudication.

B.    The Parties' Arguments

1.    Nigeria's Position

In its original motion to strike Continental's deposition notice, Nigeria makes two principle arguments.  First, it contends that because it is "immune from arrest, execution and attachment" under the FSIA, it is not properly the subject of a Rule 30(b)(6) notice.  See Memorandum of Law in Support of Motion to Strike [Dkt. 70-1] at 3.  As Nigeria views it,

because a Rule 30(b)(6) notice requires the appearance of a representative of the Nigerian government to answer questions, responding to the notice qualifies as an "arrest." Id. at 3-4. Nigeria further objects to Continental's deposition notice because it maintains that the deposition is "clearly aimed at Execution," and because it claims it has not waived sovereign immunity with respect to execution on its property. Id. Second, Nigeria contends that, even if Continental were entitled to some discovery under Rule 30(b)(6), the deposition notice should be quashed as overly broad under Rule 26(c)(1)(A) because it "does not identify any specific property or assets targeted for execution." Id. at 4. Nigeria raises a third argument in its reply and supplemental briefs, arguing that, as a foreign sovereign, it is not properly subject to Continental's deposition notice for two further reasons: (1) the language of Rule 30(b)(6) does not include foreign sovereigns in the class of entities to whom such a deposition notice may be addressed; and (2) any deponent whom Nigeria may identify as having knowledge of the topics outlined in Continental's deposition notice would likely be "high government officials," or Nigerian diplomats, who would enjoy diplomatic immunity that, in Nigeria's view, would preclude them from testifying. See Reply Memorandum in Support of Motion to Strike Notice [Dkt. 75] at 6-10; Memorandum in Further Support of Motion to Strike [Dkt. 87] at 3-4.

2.     Continental's Position

In its opposition to the motion to strike, plaintiff makes five arguments: (1) that Nigeria has ignored the relevant standard for obtaining a protective order and, in any event, has failed to meet it; (2) that courts typically allow broad post-judgment discovery from sovereign judgment debtors; (3) that the FSIA does not immunize Nigeria from post-judgment discovery; (4) that it has no obligation to identify in its deposition notice what specific property it is targeting for execution, and (5) that its deposition is not otherwise overbroad. See Memorandum in

Opposition to Motion to Strike [Dkt. 74] at 9-24.  With respect to the third argument, Continental specifically contends that the FSIA is inapplicable to its deposition notice because Judge Friedman has held that Nigeria was not entitled to sovereign immunity, and because Continental does not seek by its deposition notice to attach Nigeria's assets but only seeks discovery about them.  Id. at 12-19.

In its supplemental opposition, Continental puts forth three additional arguments: (1) that the Court should not consider any novel arguments raised for the first time by Nigeria in its reply brief; but if it does, (2) that federal courts have recognized that foreign sovereigns are properly the subject of Rule 30(b)(6) depositions; and (3) that Nigeria can meet its obligations under Rule 30(b)(6) without running afoul of diplomatic immunity.  See Memorandum in Further Opposition to Motion to Strike [Dkt. 85] at 5-12.

## II.    LEGAL ANALYSIS

Nigeria's motion to strike requires the Court to examine three principle issues: (1) whether the Court should consider arguments first raised by Nigeria in its reply brief in support of its motion; (2) whether Nigeria's status as a foreign sovereign should act as a bar to the discovery Continental seeks about its assets; and (3) whether Continental's Rule 30(b)(6) notice should be quashed under Rule 26(c)(1)(A).  Each of these issues will be addressed in turn below.

A.    The Court Will Consider All of the Arguments Raised by Nigeria in its Briefs

Before turning to the merits, the Court must address whether it will consider the arguments raised by Nigeria for the first time in its reply brief.  Judge Friedman's January 27, 2015, Order directed the parties to file supplemental briefs addressing whether Nigeria had waived those arguments by failing to assert them in its initial motion.  See Memorandum Opinion and Order (January 27, 2015) [Dkt. 84] at 4-5.  On February 10, 2015, Continental filed

6

its supplemental brief addressing the waiver issue as well as the merits of Nigeria's new arguments.  Nigeria's supplemental brief followed on February 25, 2015.  See generally Memorandum in Further Support of Motion to Strike [Dkt. 87]; Memorandum in Further Opposition to Motion to Strike [Dkt. 85].

Having considered the arguments made by both parties on the waiver issue, the undersigned will consider the merits of all of Nigeria's arguments, whether they were first raised in its original motion or reply brief.  The Court does so because of the serious questions raised by Nigeria in its reply concerning the kind of discovery that is permissible of a foreign sovereign, and because courts favor the resolution of issues on their merits.  See U.S. v. Proceeds of Drug Trafficking Transferred to Certain Foreign Bank Accounts, 757 F. Supp. 2d 24, 26 (D.D.C. 2010) (noting that courts strongly favor the resolution of disputes on their merits); Flynn v. Old World Plaster, LLC, 741 F. Supp. 2d 268, 270 (D.C.C. 2010) (same).  Further, Continental will not be prejudiced by the Court's consideration of the Nigeria's new arguments as it has now had an opportunity to address them fully in its supplemental brief.  See Memorandum in Further Opposition to Motion to Strike [Dkt. 85] at 5-12.  Going forward, the defendants are expressly directed by this Court to comply with all the requirements of the Federal Rules of Civil Procedure and the Local Rules of this Court,[3] as well as to raise all arguments in support of any motion they may file in their opening brief.

---

[3] It also appears that, before seeking intervention of the Court, Nigeria failed to confer in good faith with Continental in an effort to resolve the dispute over Continental's Rule 30(b)(6) notice as was its obligation under this Court's rules.  See Memorandum in Opposition of Defendants' Motion to Strike [Dkt. 74] at 6.  Nevertheless, for the reasons stated above, the Court will consider Nigeria's motion on its merits.

B.    <u>Nigeria's Status as a Foreign Sovereign Does Not Bar the Discovery Continental Seeks</u>

    1.    <u>Responding to a Rule 30(b)(6) Deposition Notice is Not the Equivalent of an Arrest</u>

Turning to the merits, the first issue presented is whether responding to Continental's deposition notice triggers Nigeria's "arrest" immunity under the FSIA.  <u>See</u> 28 U.S.C. §1609. According to the defendants, Continental's deposition notice constitutes an "arrest" prohibited by the FSIA because it would temporarily deprive the Nigerian representative being deposed of his or her liberty.  <u>See</u> Memorandum in Support of Motion to Strike [Dkt. 70-1] at 3-4.  The text of that Act, however, provides scant support for Nigeria's argument.  As Continental rightly points out in its opposition, the only mention of "arrest" in the FSIA is in section 1609, and that reference is in relation to the attachment of "property," not to the restraint of a person.  <u>See</u> Memorandum in Opposition to Motion to Strike [74-1] at 14, n.6; <u>see also</u> 28 U.S.C. §1609 ("<u>property</u> in the United States of a foreign state shall be immune from attachment arrest and execution") (emphasis added).

Nigeria's reliance on the definition of "arrest" from Black's Law Dictionary does little to advance its argument.  <u>See</u> Motion to Strike [Dkt. 70-1] at 3 (defining "arrest" as "[t]o deprive a person of his liberty by legal authority").  If the word "arrest" is to have any meaning, then answering questions pursuant to a Rule 30(b)(6) deposition notice cannot be deemed to be the equivalent of it.  Indeed, Nigeria's argument proves too much.  If accepted, such an argument could easily be applied to every form of discovery prescribed by the Federal Rules of Civil Procedure, all of which impose on the recipient some obligation to respond under threat of compulsion by a court.  In any event, under the D.C. Circuit's holding in <u>FG Hemisphere Associates, LLC v. Democratic Republic of Congo</u>, 637 F.3d 373, 380 (D.C. Cir. 2011), if

Nigeria were to choose to ignore its obligations under Rule 30(b)(6), this Court could sanction

Nigeria for its non-compliance and not run afoul of the FSIA.  See id.; see also Richmark Corp.

v. Timber Falling Consultants, 959 F.2d 1468, 1473, 1479 (9th Cir. 1992) (requiring foreign

instrumentality to respond to asset discovery, and affirming district court sanctions for failing to

do so).  If holding a foreign sovereign in civil contempt for disobeying a discovery order does

not violate its sovereign immunity, then requiring a foreign sovereign to comply with its

discovery obligations under a deposition notice does not do so either.

2.      A Foreign Sovereign is a Proper Subject of a Rule 30(b)(6) Deposition

The next issue is whether Nigeria, as a foreign sovereign, is the proper subject of a Rule

30(b)(6) deposition.  The Court believes it is.  Nigeria's status as a sovereign should not effect a

per se bar to Continental's use of a Rule 30(b)(6) deposition, or, for that matter, to Continental's

appropriate use of any other discovery tool available to it under the Federal Rules of Civil

Procedure.  As the D.C. Circuit instructed in FG Hemisphere, "Congress kept in place a court's

normal discovery apparatus in FSIA proceedings."  637 F.3d at 378.  Indeed, federal courts,

including a judge of this Court, have authorized the use of a Rule 30(b)(6) deposition addressed

to foreign sovereigns.  See McKesson Corp. v. Islamic Republic of Iran, 185 F.R.D. 70, 79

(D.D.C. 1999); Rubin v. Islamic Republic of Iran, 2007 WL 2219105, *5-6 (N.D. Ill. 2011).  In

McKesson, Judge Flannery expressly considered "whether a Rule 30(b)(6) notice may be

addressed to Iran in light of its status as a foreign sovereign."  185 F.R.D. at 79.  The Court

concluded that a foreign sovereign may properly be subject to such a notice, and granted the

plaintiff's motion to compel Iran to produce witnesses to testify pursuant to the Rule.  Id.  In so

doing, the Court rejected the same argument advanced by Nigeria here – that because foreign

sovereigns are not among the entities specifically listed in Rule 30(b)(6), they are not a proper

9

subject of a deposition under the Rule.  Id.; see Reply Memorandum in Support of Motion to Strike Notice [Dkt. 75] at 6-10.  Judge Flannery reasoned that while Rule 30(b)(6) does not explicitly list "foreign sovereigns" as being proper recipients of a deposition notice under the Rule, it does list "governmental agenc[ies]," and that courts had interpreted that phrase to include governmental entities within the United States.  Id.  Judge Flannery concluded it was appropriate to extend the rule's application to foreign sovereigns because federal courts had applied Rule 30(b)(6) notices to foreign corporations without geographic limitation.  Id. at 79-80; see also Rubin, 2007 WL 2219105, at *5-6.

Nigeria has cited no authority reaching a contrary result.  Because this Court is convinced that the reasoning in McKesson is sound, it declines to adopt a different position in this case. The inclusion of the phrase "or other entity" at the end of the list of proper recipients of a Rule 30(b)(6) notice, plainly demonstrates that the specified entities included in the list were meant to be non-exclusive.  See Fed. R. Civ. P. 30(b)(6).  Further, in the view of this Court, a "foreign government" is an "entity" that fits comfortably within that list as the list of specified entities includes both "public . . . corporation[s]" and "governmental agenc[ies]."  Id.[4]

---

[4] Nigeria also maintains that individuals who it may identify to testify in response to Continental's Rule 30(b)(6) notice may be Nigerian diplomats who may enjoy diplomatic immunity that would prohibit them from testifying. Reply in Support of Motion to Strike [Dkt. 75] at 10.  This Court doubts that high ranking officials of a foreign sovereign that has waived immunity to suit, as Nigeria has, can avoid testifying in the same matter by claiming diplomatic immunity.  See Great Socialist People's Libyan Arab Jamahiriya v. Miski, 683 F. Supp. 2d 1, 12 (D.D.C. 2010) ("Diplomatic immunity flows from foreign state sovereign immunity, and consequently the underlying principles supporting the doctrines mirror each other.").  The undersigned will not resolve that issue at this point because Nigeria's diplomatic immunity claim is contingent and indefinite.  Nevertheless, the Court observes that the text of Rule 30(b)(6) would prohibit a party from seeking to avoid its obligations under the Rule by designating a witness whom it believes will refuse to testify.  See Fed. R. Civ. P. 30(b)(6).  If an employee or agent of the party has knowledge regarding a subject identified in a Rule 30(b)(6) notice but is unable to testify, then the party is obligated to prepare another witness who can testify as to the information known by that employee or agent.  See id.

3.      Foreign Sovereigns Enjoy No "Discovery-in-Aid-of-Execution" Immunity Under the FSIA

Also unavailing is Nigeria's contention that Continental's Rule 30(b)(6) notice should be struck because it is "clearly aimed at 'Execution'" of Nigerian property that may be immune from execution under the FSIA.  See Memorandum of Law in Support of Motion to Strike [Dkt. 70-1] at 3-4.  Foreign sovereigns enjoy no such "discovery-in-aid-of-execution" immunity under the FSIA.  Defendants' argument to the contrary erroneously conflates two different things:  (1) Continental's discovery of Nigeria's assets that may be subject to attachment and execution; and, once identified, (2) a future execution proceeding wherein Nigeria's claim that a particular asset is immune from execution may be asserted and tested.  As it stands, Continental's deposition notice does not implicate any immunity from execution that Nigeria may have under FSIA.  It does not attach Nigeria's property, nor does it have any legal effect whatsoever on Nigeria's property; it simply mandates Nigeria's compliance with the subpoena.  Accordingly, whatever execution immunity Nigeria may possess under the FSIA, it currently poses no bar to the discovery Continental seeks.  As the Second Circuit held in EM Ltd. v. Republic of Argentina, 695 F.3d 201, 209 (2nd Cir. 2012), aff'd sub nom. Republic of Argentina v. NML Capital, Ltd., 134 S. Ct. 2250 (2014), whether a foreign sovereign's property identified during post-judgment discovery ultimately satisfies FSIA's attachment requirements "must be determined separately under the FSIA, but this determination does not affect discovery."  This is because a court's power to order discovery to enforce its judgment "does not derive from its ultimate ability to attach the property in question but from its power to conduct supplementary proceedings, involving persons indisputably within its jurisdiction, to enforce valid judgments."  EM Ltd., 695 F.3d at 208.

Nevertheless, in Nigeria's view, to give full effect to the execution immunity its assets may enjoy under the FSIA, this Court should only permit discovery of assets that would, in fact, be subject to execution under the FSIA, i.e., assets which fall within the "commercial activity" exception to FSIA immunity.  See 28 U.S.C. § 1610(a) (to be subject to attachment or execution, property of a sovereign state must be "used for a commercial activity in the United States").  Of course, the very purpose of Continental's Rule 30(b)(6) notice is to determine which of Nigeria's assets in the United States may be attachable because they are used by Nigeria for commercial activity rather than for a sovereign function.  Nigeria does not address how Continental could make that determination at this point without the aid of discovery.  Because it would be fundamentally unfair to Continental to do so, this Court will not impose the perhaps impossible burden on Continental to demonstrate, as a threshold matter, what Nigerian assets are subject to execution under the FSIA before permitting discovery concerning those assets to proceed.  As the District Court observed in Thai Lao Lignite (Thailand) Co., Ltd. v. Gov't of Lao People's Democratic Republic, 924 F. Supp.2d 508, 519 (S.D.N.Y. 2013), "[f]orcing Petitioners to show that property is attachable before permitting them to gain any information about Respondent's assets would present an insurmountable Catch-22 for judgment creditors seeking to enforce a valid judgment."

In any event, the Supreme Court's recent affirmance of the Second Circuit's decision in EM Ltd. expressly rejected that the FSIA provides any such "discovery-in-aid-of-execution immunity" to foreign sovereigns.  See EM Ltd. v. Republic of Argentina, 695 F.3d 201 (2nd Cir. 2012), aff'd sub nom. Republic of Argentina v. NML Capital, Ltd., 134 S. Ct. 2250, 2257-58 (2014).  Further, it put to rest whatever lingering doubt may have existed concerning whether a foreign sovereign that has waived immunity to suit is nevertheless immune from post-judgment

discovery seeking to identify assets that could be subject to attachment and execution in satisfaction of a court's judgment.  Id.[5]  In that case, NML Capital brought numerous actions against Argentina in the Southern District of New York to collect on defaulted Argentinian bonds.  EM Ltd., 695 F.3d at 203.  Jurisdiction in the district court was premised on a waiver of sovereign immunity found in the Argentinian bond indenture agreements.  Id.  Over Argentina's objection, the district court compelled two non-party banks to comply with NML Capital's subpoenas that sought documents about Argentina's assets to determine which of its assets may be subject to attachment and execution to satisfy the bond debts.  Id. at 204-05.  Unlike here, however, NML Capital sought discovery about Argentinian assets located anywhere in the world.  Id. at 204.

When the case came before the Supreme Court, the discrete issue presented was whether the FSIA "imposes [a] limit on a United States court's authority to order blanket post-judgment execution discovery on the assets of a foreign state used for any activity anywhere in the world." 134 S. Ct. at 2255 (internal citation and quotation marks omitted).  The Supreme Court answered that question in the negative.  In so doing, the Court first observed that Argentina had waived its immunity to suit under the FSIA and, consequently, it was "'liable in the same manner and to the same extent as a private individual under like circumstances.'"  Id. at 2256 (quoting 18 U.S.C. § 1606).  Turning to Argentina's claim of "discovery-in-aid-of-execution immunity," the Court searched the FSIA for any evidence that it was Congress' intent to confer that additional benefit on foreign sovereigns.  According to the Court, the FSIA was established as a "comprehensive

_____

[5] In so doing, the Court also resolved a disagreement between the Circuits on the permissible scope of post-judgment discovery against a foreign sovereign judgment debtor.  Compare EM Ltd., 695 F.3d at 209 with Rubin v. Islamic Republic of Iran, 637 F.3d 783, 796-97 (7th Cir. 2011) (district court's subject matter jurisdiction over a foreign sovereign insufficient to confer the power to order discovery that is relevant to enforcing a judgment against the sovereign and holding that the FSIA requires a judgment creditor to identify specific non-immune assets before it is entitled to further discovery about those assets).  Following the Supreme Court's decision in NML, Capital, Ltd. affirming the Second Circuit's decision in EM Ltd., Nigeria's reliance on the Seventh Circuit's decision in Rubin is unavailing.

set of legal standards governing claims of immunity in every civil action against a foreign state."

Id.  Notably, however, it does not contain any "provision forbidding or limiting discovery in aid

of execution of a foreign-sovereign judgment debtor's assets."  Id. at 2256.  "Far from containing

the 'plain statement' necessary to preclude application of federal discovery rules," the Court

observed, "the Act says not a word on the subject."  Id. at 2256-57.  Accordingly, the Court held

that foreign states do not enjoy "discovery-in-aid-of-execution immunity" under the Act.  Id. at

2257-58.

Argentina, like Nigeria here, also maintained that NML Capital must demonstrate, as a

threshold matter, that the property about which it sought discovery through subpoenas was

exempt from execution immunity under the FSIA.  Rejecting that claim, the Supreme Court

explained:

> [T]he reason for these subpoenas is that NML does not yet know
> what property Argentina has and where it is, let alone whether it is
> executable under the relevant jurisdiction's law.  If, bizarrely,
> NML's subpoenas had sought only "information that could not
> lead to executable assets in the United States or abroad," then
> Argentina likely would be correct to say that the subpoenas were
> unenforceable – not because information about nonexecutable
> assets enjoys a penumbral "discovery immunity" under the Act,
> but because the information that could not possibly lead to
> executable assets is simply not "relevant" to execution in the first
> place. . . . But of course that is not what the subpoenas seek.  They
> ask for information about Argentina's worldwide assets generally,
> so that NML can identify where Argentina may be holding
> property that is subject to execution.  To be sure, that request is
> bound to turn up information about property that Argentina regards
> as immune.  But NML may think the same property not immune.
> In which case, Argentina's self-serving legal assertion will not
> automatically prevail; the District Court will have to settle the
> matter.

Id. at 2257-58 (emphasis in original).

The same result must issue here.  Judge Friedman has established that Nigeria waived its immunity to suit pursuant to section 1605(a)(6) of the FSIA, and that it owes a valid money judgment to Continental.  See Opinion (March 23, 2010) [Dkt. 38] at 9; Amended Order and judgment (March 26, 2013) [Dkt. 61] at 1-2.  Both rulings have been affirmed by the Court of Appeals.  See Judgment (March 6, 2015) [Dkt. 90] at 2, n.2, 3.  Consistent with the Supreme Court's holding in NML Capital, Ltd., Nigeria enjoys no further immunity under the FSIA to resist Continental's post-judgment discovery in this matter.  Accordingly, the defendants' motion to strike Continental's deposition notice pursuant to the FSIA, will be denied.

C.    Nigeria Has Provided No Basis to Quash Continental's Deposition Notice Under Rule 26(c)(1)(A)

Nigeria's motion also seeks to quash Continental's Rule 30(b)(6) deposition notice pursuant to Rule 26(c)(1)(A) because it maintains that responding to the notice will result in "avoidable aggravation and costs of engaging in such discovery . . . where it is obvious that the property targeted for discovery is immune from arrest, attachment or execution."  Reply in Support of Motion to Strike [Dkt. 75] at 8.  According to Nigeria, this Court should forbid Continental's "wide-ranging nationwide discovery of [its] assets and property" under Rule 26(c)(1)(A) unless Continental first specifically "identif[ies] . . . property or assets targeted for execution" and makes a "showing that the property it seeks to discover is within the exception to immune property under FSIA."  Motion to Strike [Dkt. 70-1] at 4; Reply in Support of Motion to Strike [Dkt. 75] at 9.  For the reasons stated below, Nigeria's request to quash Continental's notice under Federal Rule of Civil Procedure 26(c)(1)(A) will be denied.

Rule 26(c)(1)(A) provides as follows:

A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for

> the district where the deposition will be taken. . . .  The court may,
> for good cause, issue an order to protect a party or person from
> annoyance, embarrassment, oppression, or undue burden or
> expense, including one or more of the following:  (A) forbidding
> the disclosure or discovery . . .

Fed. R. Civ. P. 26(c)(1)(A).  In assessing a request to forbid discovery under Rule 26(c)(1)(A),

the Rule provides that a court should consider, among other matters irrelevant here, whether the

"burden or expense of the proposed discovery outweighs its likely benefit, considering the needs

of the case, the amount in controversy, the parties' resources, the importance of the issues at

stake in the action, and the importance of the discovery at resolving the issues."  Fed. R. Civ. P.

26(b)(2)(C).

Nigeria has demonstrated no basis under Rule 26 to quash Continental's deposition

notice.  As an initial matter, this Court rejects Nigeria's invitation to require, under Rule 26, that

Continental "first make a showing that the property it seeks to discover is within an exception to

immune property under FSIA" before permitting the noticed deposition to go forward.  Reply in

Support of Motion to Strike [Dkt. 75] at 8-9.  The Supreme Court held in NML Capital, Ltd. that

the FSIA imposes no such obligation on a judgment creditor.  See 134 S. Ct. at 2257-58.  While

that case focused only on the requirements of the FSIA, and not on any restrictions that the

Federal Rules of Civil Procedure may impose on foreign sovereign discovery, the undersigned

finds no basis under Rule 26 to impose such a threshold requirement on Continental.  Indeed,

doing so would inflict on Continental the same Catch-22 that informed the Supreme Court's

rejection of such a threshold requirement under the FSIA.  Id. at 2257.  Like the judgment

creditor in NML Capital, Ltd., Continental needs the discovery it seeks of Nigeria's assets

precisely because it "does not yet know what property [Nigeria] has and where it is, let alone

whether it is executable."  Id.  For that reason, forcing Continental to make a threshold showing

that a given asset falls within an exception to FSIA execution immunity before its discovery

concerning that asset may proceed, would likely impose an insurmountable burden and deny it

the very discovery it needs to meet its burden of production during execution proceedings in this

case.[6]  Nothing in Rule 26 requires that result.

Also without merit is Nigeria's more general claim that Continental's deposition notice

should be quashed because it is overly broad.  See Motion to Strike [Dkt. 70-1] at 4.  Contrary to

Nigeria's assertion, it is not "obvious that the property targeted for discovery" in Continental's

deposition notice "is immune from arrest, attachment or execution."  Reply in Support of Motion

to Strike [Dkt. 75] at 8.  None of the areas of inquiry outlined in Continental's notice, on their

face, appear to be directed at property or assets that would be categorically immune from

execution under the FSIA.[7]  Indeed, Continental seeks, in its notice, only information about

---

[6] In attachment and execution proceedings, Continental will bear the burden of producing evidence to show that FSIA execution immunity should not be granted with regard to specific Nigerian property.  See FG Hemisphere Assocs., LLC v. Democratic Republic of Congo, 447 F.3d 835, 842 (D.C. Cir. 2006).  On the other hand, Nigeria will bear the ultimate burden of persuasion to show that FSIA execution immunity should be invoked for the property in question.  See id.

[7] Continental's notice seeks to depose a representative of Nigeria about the following five categories of information:

    1.       Assets, including bank accounts, held in the United States and used by Nigeria, the Central Bank of Nigeria ("CBN"), or the Nigerian National Petroleum Corporation ("NNPC"), to conduct commercial activity or make dollar denominated payments in the United States.  (Topics 1-10).

    2.       The identification of, and payments, receivables, collateral or security related to, commercial activity or financing being conducted by Nigeria, or on its behalf, in the United States.  (Topics 11-14).

    3.       Financial accounts and investments in the United States relating to Nigeria's Sovereign Wealth Fund, by the Nigeria Sovereign Investment Authority ("NSIA") or otherwise on behalf of Nigeria.  (Topics 15-17).

    4.       Contracts entered into by Nigeria, CBN, or NNPC, relating to the sale of crude oil, natural gas or related products to any person in the United States or for delivery in the United States.  (Topics 18-19).

    5.       The relationships between Nigeria and three specific governmental entities acting on its behalf in the United States, i.e., CBN, NNPC, and NSIA. (Topics 20-22).

Nigeria's property, assets, transactions, or investments which are used for commercial activities and which are located, or undertaken, in the United States.[8]  See Notice of Rule 30(b)(6) Deposition [Dkt. 70-2] at 2-5.  Finally, Continental further limits the scope of its inquiry by restricting the date of the information it is seeking to the inception of its lawsuit.  See id. at 2. For all of these reasons, the Court finds no basis to grant Nigeria's request that Continental's deposition notice should be quashed under Rule 26(c)(1)(A) because it is overbroad.

Also unavailing is defendants' bald assertion that Continental's deposition notice should be quashed because responding to it will be unduly burdensome and expensive for Nigeria.  As an initial matter, Nigeria fails to provide this Court with any concrete information demonstrating the cost of responding to Continental's deposition notice, as was its obligation when it sought a protective order.  See Avirgan v. Hull, 118 F.R.D. 252, 254 (D.D.C. 1987) (the party seeking a protective order "bears the burden of proving its necessity," must "articulate specific facts showing 'clearly defined and serious injury' resulting from the discovery sought . . . and cannot rely on merely conclusory statements") (internal citations omitted).  In any event, while it may be that responding to Continental's discovery notice will be time-consuming and expensive, the question is whether the burden of that discovery will be disproportionate to its value to Continental in its effort to enforce its approximately $252 million judgment.  See Fed. R. Civ. P. 26(b)(2)(c)(iii).  On that score, the Court cannot say that Nigeria's burden of producing discovery responsive to the notice is so disproportionate to that discovery's value to Continental in collecting on its very substantial judgment, that Continental's deposition notice must be

---

See Notice of Rule 30(b)(6) Deposition [Dkt. 70-2] at 2-5.

[8] In both respects, Continental's notice is significantly narrower than the discovery requests sanctioned by the Supreme Court under the FSIA in NML Capital, Ltd.  There, the judgment creditor sought discovery of the foreign sovereign's assets located outside the United States and without regard to whether the assets were used for commercial activities.  See 134 S. Ct. at 2253-54, 2259.

quashed.  It does not appear that Nigeria has paid anything towards satisfying the judgment, and

without the discovery Continental seeks, there is little likelihood that Continental's efforts at

recovery will be successful.

In the same vein, Nigeria has made no showing concerning the costs associated with

complying with Continental's Rule 30(b)(6) deposition, or demonstrated that it lacks the

resources to cover them.  In fact, by pursuing a Rule 30(b)(6) deposition rather than other

avenues of discovery, Continental will likely save Nigeria significant discovery costs, provided,

of course, that Nigeria complies with its obligations under Rule 30(b)(6).[9]  As this Court

explained in McKesson, Rule 30(b)(6) was "intended to streamline the discovery process," and

"to curb the bandying by which officers or managing agents of [an entity] are deposed in turn but

each disclaims knowledge of the facts that are clearly known to the organization." McKesson,

185 F.R.D. at 79 (internal citations omitted).  Through Rule 30(b)(6), Continental can

accomplish in a single deposition what it otherwise may have taken dozens of depositions to

achieve – a result that will decrease the burden of discovery for both plaintiff and defendants.

Thus, the Court cannot conclude that responding to Continental's deposition notice will be

unduly burdensome or costly for Nigeria.  Indeed, it appears on the present record that the

discovery Continental seeks through its deposition notice effects an appropriate balance between

what it needs for fair adjudication of its claims, and the defendants' right not to be unduly

---

[9] Of course, if it is Nigeria's desire to keep sensitive data about its assets and finances away from Continental so as to prevent Continental from collecting on its judgment, then Nigeria may be significantly concerned about Continental's decision to seek information about its assets directly, and efficiently, through a Rule 30(b)(6) deposition.  But such concern is "entitled to no weight" in the Court's decision whether to permit the deposition to go forward.  EM Ltd., 695 F.3d at 210, n.7.

burdened by that discovery.  In any event, Nigeria certainly has provided no basis under Rule

26(c)(1)(A) to quash Continental's deposition notice in toto.[10]

### III.    CONCLUSION

For the foregoing reasons, Nigeria's motion to strike Continental's deposition notice will

be denied.  In reaching this conclusion, the Court is not unmindful of the "comity interests and

the burden that discovery might cause" Nigeria as post-judgment discovery proceeds in this case.

NML Capital, Ltd., 134 S. Ct. at 2259, n.6.  To address those concerns, at the request of the

parties, the Court is prepared to enter a Protective Order that would permit Nigeria to designate

information that it discloses to Continental as confidential, and to prohibit that information's

further disclosure outside of this litigation.  See, e.g., EM Ltd., 695 F.3d at 204.  Of course, if

and when Continental identifies any Nigerian property for attachment and execution, Nigeria

will enjoy, in future execution proceedings, the full immunity that the FSIA affords the property

of a foreign sovereign.  The Court is confident that these safeguards will provide Nigeria with all

of the protection to which it is entitled.  At this point in the litigation, however, as a party

---

[10] While it provides an insufficient basis to quash the Continental's deposition in toto, the Court is concerned that the underlined portion of the following definition of "Nigeria" from plaintiff's notice may be overly broad and/or unduly burdensome:

> Defendant Federal Government of Nigeria, including without limitation Defendant Attorney General of the Federation, Defendant Minister of the Interior, any present or former governmental authorities, institutions, ministries, committees, divisions, departments, agencies, state-owned corporations or subsidiaries of such corporations, including without limitation [Central Bank of Nigeria], [Nigerian National Petroleum Corporation], [Nigeria Sovereign Investment Authority], and any present and former officials, employees, consultants, agents, accountances, attorneys, and any other person or entity acting or purporting to act on behalf of the Federal Government of Nigeria.

Notice of Rule 30(b)(6) Deposition [Dkt. 70-2] at 2 (emphasis added).  Because neither party addressed the issue in its briefs on Nigeria's motion, the Court will not further address the issue now.  If the defendants believe that the underlined portion of the definition is overly broad and/or unduly burdensome, and if the parties are unable to agree on its narrowing, defendants may seek further relief from the Court.  See, e.g., EM Ltd., 695 F.3d at 204-05 (parties agreeing to limit the scope of the definition of the foreign sovereign in discovery requests).  Further, upon a sufficient showing by defendants, the Court would also consider setting some dollar limit on the value of Nigerian assets responsive to Continental's request.  See, e.g., FG Hemisphere Assocs., LLC, 637 F.3d at 376 (limiting discovery of assets located outside of the District of Columbia to assets valued over $10,000).

properly within the jurisdiction of this Court, Nigeria must accept the reasonable discovery

burdens imposed on it by the Federal Rules of Civil Procedure so that Continental is not denied

fair process in future execution proceedings.

An Order accompanies this Memorandum Opinion.


Date:  April 28, 2015                                   _____
                                                       G. MICHAEL HARVEY
                                                       UNITED STATES MAGISTRATE JUDGE